Rosemary REID, Plaintiff,

v.

GRUNTAL & CO., INC., Defendant and
Third–Party Plaintiff,

v.

FIRST UNUM LIFE INSURANCE
COMPANY, Third–Party
Defendant.

No. 90–0062.

United States District Court,
D. Maine.

April 9, 1991.

Peter J. DeTroy, Christopher C. Taintor, Norman, Hanson & DeTroy, Portland, Me., for Rosemary Reid.

Rufus· Brown, Drummond, Woodsum, Plimpton & MacMahon, Portland, Me., for Gruntal & Co.

Andrew J. Bernstein, G. Stegen Rowe, Portland, Me., for First UNUM.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT GRUNTAL'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

This matter comes before the Court on Defendant Gruntal & Co., Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Motion will be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Rosemary Reid, a Maine resident, entered into a five-year employment contract with Defendant Gruntal & Co., Inc. (hereinafter Gruntal), a Delaware corporation, on August 21, 1987. As one component of her compensation, Defendant Gruntal offered to Plaintiff a benefits package which included group long-term disability insurance, to be paid for by Gruntal, and supplemental long-term disability insurance, to be paid for by Plaintiff. The premium for the supplemental disability benefits was forty-four cents for each one hundred dollars of Plaintiff's "basic monthly earnings." The maximum benefit available under this supplemental plan was to be two-thirds of Plaintiff's "basic monthly earnings," not to exceed $10,000. Defendant First UNUM Life Insurance Company (hereinafter UNUM) was the underwriter for the long-term and supplemental disability insurance policies, while Defendant Gruntal bore the responsibility for determining employees' eligibility and the amount of premiums due from covered employees.

With Plaintiff's consent, Defendant Gruntal withheld forty-four dollars from her pay each month, up to and including January 1989, which was applied to the premium for supplemental disability insurance. Plaintiff suffered a major depressive episode on June 29, 1988 which rendered her disabled. She filed a claim for benefits under the disability insurance policy on or about November 27, 1988. Defendant UNUM received the claim on January 26, 1989 and agreed to pay Plaintiff supplemental disability benefits in the amount of $775.39 per month. Each of these facts is undisputed.

Plaintiff claims that Defendant UNUM's monthly payments of $775.39 are substantially less than the benefits to which she is allegedly entitled under the supplemental disability insurance policy as it was represented to her by Defendant Gruntal.

Plaintiff's disagreement with Defendant UNUM over the amount of the benefits turns on differing interpretations of the phrase "basic monthly earnings" which is used in the insurance policy to determine the amounts of both benefits and premiums. The policy defines "basic monthly earnings" for employees receiving commissions, including Plaintiff, as follows:

"Basic monthly earnings" means the insured's monthly rate of earnings from the employer for the fiscal period of July in effect just prior to the date disability begins. It includes commissions but not bonuses and other compensation or pay for more than 40 hours in a week.

Affidavit of Donald A. Russell, Exhibit A at L–PS–2 (2/1/88 Rev.) (Docket No. 4).

Defendant UNUM arrived at the $775.39 monthly benefit it paid to Plaintiff by calculating Plaintiff's basic monthly earnings using *only those earnings paid by Defendant Gruntal.* Excluded from this calculation were any earnings paid by Plaintiff's previous employer. Plaintiff alleges that Defendant Gruntal represented to her that Plaintiff's disability benefits would equal two-thirds of her total earnings for the calendar year immediately preceding the onset of disability, *including any earnings Plaintiff received from previous employers during that time.* Defendant Gruntal essentially agrees with Plaintiff's interpretation of the policy, and alleges that it has determined coverage under the supplementary disability insurance policy by projecting an "employee's expected average monthly earnings from Gruntal, based on the employee's W–2 *from his previous employer.*" Answer and Cross–Claim of Defendant Gruntal at 14 (Docket No. 6) (emphasis added).

Plaintiff filed a Complaint in this Court on March 6, 1990, which she subsequently amended,[1] seeking declaratory relief, reformation of the disability insurance policy, and damages. Specifically, Plaintiff makes six state common law claims against Defendant Gruntal: (1) Gruntal made fraudulent misrepresentations about her disability benefits; (2) Gruntal made negligent misrepresentations about her disability benefits; (3) Gruntal breached Plaintiff's employment contract; (4) Gruntal is estopped from refusing to perform its promise to pay the greater amount of benefits; (5) Gruntal was negligent; and (6) Gruntal breached its common law fiduciary duty to Plaintiff.

Plaintiff also alleges that Defendant Gruntal infringed her rights under the Employee Retirement Income Security Act (hereinafter ERISA or Act), 29 U.S.C. § 1001 *et seq.*, and breached its fiduciary duty under ERISA. In addition, Plaintiff claimed that Defendant UNUM breached its fiduciary duty under the Act, and was estopped under ERISA from denying Plaintiff the greater amount of disability benefits.[2]

Plaintiff has settled and released her claims against Defendant UNUM and, by order of this Court on December 4, 1990, all of Plaintiff's claims against Defendant UNUM were dismissed pursuant to Federal Rule of Civil Procedure 41. Defendant Gruntal made appropriate and timely cross-claims against Defendant UNUM prior to that dismissal, seeking indemnity and contribution from Defendant UNUM for Plaintiff's claims in addition to claims for breach of contract, negligence, promissory estoppel, and unjust enrichment. Thus, Defendant UNUM remains in the case as *a third-party defendant.*

Defendant Gruntal now seeks dismissal of Plaintiff's state common law claims on the grounds that these claims are preempted by ERISA and, as a result, fail to state

---

**1.** Plaintiff filed a Motion to Amend Complaint on July 25, 1990 which was opposed by Defendant Gruntal. This Court granted the motion on December 4, 1990. All references herein to the Complaint include the Amended Complaint, except where otherwise noted.

**2.** Plaintiff also claimed that Defendant UNUM violated the late payment provisions of the Maine Insurance Code. 24–A M.R.S.A. § 2436. This Court, acting on the Recommended Decision of United States Magistrate Judge David Cohen (Docket No. 11), held that Plaintiff's state statutory claim was preempted by ERISA and dismissed the claim on those grounds. *See* Amended Order Affirming Magistrate's Recommended Decision (Docket No. 16).

a claim upon which relief may be granted. In addition, Defendant Gruntal seeks dismissal of Plaintiff's ERISA claims.[3]

## II. MOTION TO DISMISS AND PRE-EMPTION OF STATE LAW CLAIMS

■ Rule 12(b)(6) permits motions to dismiss which allow defendants to test the formal sufficiency of a plaintiff's pleadings. The sufficiency of a pleading must, however, be considered in light of the liberal notice pleading requirements of the Federal Rules of Civil Procedure. *Mladen v. Gunty*, 655 F.Supp. 455, 457 (D.Me.1987) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1356, at 590 (1969)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To insure that this narrow effect is given to Rule 12(b)(6) motions, the Court is directed to accept as true all of the Plaintiff's allegations and to interpret all facts contained in the complaint most favorably to the Plaintiff. *See Miree v. De Kalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

Defendant Gruntal argues that all of Plaintiff's state common law claims are preempted by ERISA and, therefore, must be dismissed.[4] ERISA's provisions governing preemption provide that the Act

shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)].

29 U.S.C. § 1144(a). The Act defines "state law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). An "employee benefit plan," or an "employee welfare benefit plan," 29 U.S.C. § 1002(3), is

any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1)(A). *See also* 29 U.S.C. § 1002(3). There is no disagreement between the parties herein that the supplemental disability insurance policy at issue in this case fits comfortably within this definition of an "employee welfare benefit plan."

The determinative question, therefore, is whether or not Plaintiff's state common law claims "relate to" the supplemental disability insurance policy. The Supreme Court has made abundantly clear that the phrase "relate to" must be "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (quoting *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985), and *Shaw v. Delta Airlines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).

---

**3.** Defendant Gruntal filed its original Motion to Dismiss with this Court on August 7, 1990. *See* Motion to Dismiss of Defendant Gruntal (Docket No. 17). The Court permitted Plaintiff to amend her Complaint on December 4, 1990 by adding two claims which rely on ERISA, *see* Amended Complaint (Docket No. 25), and gave Defendant Gruntal leave to file an amended Motion to Dismiss, which was filed on December 27, 1990. *See* Amended Motion to Dismiss of Defendant Gruntal (Docket No. 27). The

Court will consider all arguments advanced by Defendant Gruntal in its Motion to Dismiss and its Amended Motion to Dismiss, and all memoranda submitted in support of those two motions.

**4.** This Court has previously addressed the issue of preemption under ERISA in its first opinion in *Bellino v. Schlumberger Technologies, Inc.*, 753 F.Supp. 391 (D.Me.1990) (Carter, C.J.).

Only two classes of state law claims by beneficiaries would not be preempted under this very broad definition. The first class of claims are those brought pursuant to state laws which govern insurance, state criminal laws, or a limited class of other regulations included by Congress in the so-called "savings clause." *See* 29 U.S.C. § 1144(b). Plaintiff does not and could not argue that her claims are among those protected by ERISA's "savings clause." The second class of state law claims not preempted by ERISA are those claims which relate to an employee benefit which is not provided pursuant to an employee benefit *plan. See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 7–8, 107 S.Ct. 2211, 2215–16, 96 L.Ed.2d 1 (1987). The Supreme Court illuminated this subtle distinction by giving the following explanation for its holding that a policy of paying employees for unused vacation time did not constitute an "employee benefit plan":

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds....
>
> It is unlikely that Congress intended to subject to ERISA's reporting and disclosure requirements those vacation benefits which by their nature are payable on a regular basis from the general assets of the employer and are accumulated over time only at the election of the employee.

*Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). Thus, only state law claims relating to "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation" are preempted. *Fort Halifax,* 482 U.S. at 11, 107 S.Ct. at 2217.[5] All other claims are not preempted.

There is no dispute in this case that the supplemental disability insurance policy at issue is an ongoing program administered by Defendants Gruntal and UNUM to provide an employee benefit. It is undeniably an "employee benefit plan." The dispositive question in Plaintiff's state law claims—how particular language in a provision of the plan should best be interpreted—goes to the essence of this employee benefit plan. Faced with similar facts in a case involving a disability insurance policy, the Supreme Court held that claims for breach of contract, fraud, and breach of fiduciary duty "undoubtedly meet the criteria for preemption" by ERISA. *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553. The Court is satisfied that there is no material difference in the relationship between Plaintiff's state common law claims in this case, and the state claims in *Pilot Life* and the disability insurance policy at issue there.[6] All of Plaintiff's state common law claims, contained in Counts I through VI of the Complaint, are preempted by ERISA. Accordingly, those counts will be dismissed for failure to state a claim upon which relief may be granted.

5. Plaintiff attempts to impose on *Fort Halifax* an interpretation it will not bear. Plaintiff argues that her state law claims are preempted by ERISA only if "those claims would have *a significant impact on the administrative scheme* established by Gruntal to make disability benefits available to its employees...." Plaintiff's Memorandum of Law in Opposition to Defendant Gruntal's Motion to Dismiss at 4 (Docket No. 9M) (hereinafter Plaintiff's Memorandum) (emphasis added). Plaintiff is attempting to draw a distinction between a benefit, on the one hand, and the plan which produces the payment of the benefit, on the other hand. This is not the relevant distinction drawn by the Supreme Court in either *Fort Halifax* or *Morash.* The relevant distinction is between a benefit provided by an employer *pursuant to a plan,* on the one hand, and a benefit provided by an employ-

er not pursuant to an ongoing plan, on the other hand.

6. The Supreme Court reiterated the breadth of ERISA's preemption clause in a recent case involving the alleged wrongful discharge of an employee purportedly inspired by the employer's desire to deprive the employee of his pension. *Ingersoll–Rand Co. v. McClendon,* — U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The Court declared that causes of action which make specific reference to, and are premised on the existence of, an employee benefit plan, necessarily "relate to" such a plan and are, as a result, preempted by ERISA. *Id.* 111 S.Ct. at 483. Plaintiff's claims in this case are inextricably bound up with the interpretation of the terms of an employee benefit plan. As a result, they are preempted by ERISA.

## III. AVAILABILITY OF ERISA CLAIMS

### A. *Estoppel*

Count VII of Plaintiff's Complaint advances an estoppel theory and seeks to collect from Defendant Gruntal the difference between the benefits actually provided by Defendant UNUM under their interpretation of the terms of the plan and the higher level of benefits which Defendant Gruntal allegedly represented would be provided to Plaintiff.[7] Defendant Gruntal argues in this motion that estoppel is not available under ERISA and, therefore, that this count of the Complaint should be dismissed.

■ ERISA requires that employee benefits plans "be established and maintained pursuant to a written instrument...." 29 U.S.C. § 1102(a)(1). Rights and obligations under ERISA are determined according to federal common law, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989), relying on principles of trust law, *id.* at 110–11, 109 S.Ct. at 953–54, and "common sense canons of contract interpretation." *Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 489 (1st Cir.1989). In the instant case, the question is whether ERISA and its associated common law recognizes estoppel claims.

■ The Court of Appeals for the First Circuit's decision in *Cleary v. Graphic Communications International Union*, 841 F.2d 444 (1st Cir.1988), while holding that estoppel could not be gleaned from the facts in that case, left the door open to some estoppel claims under ERISA. The decisive facts in *Cleary's* holding that estoppel was not available were: (1) the rules of the pension fund were clearly contrary to the representations made by various parties; (2) Plaintiffs' claims sought additional

payments directly from the pension fund; (3) the union officials who made some of the representations upon which Plaintiffs relied did not have apparent authority to bind the pension fund; and (4) the pension fund's activities upon which Plaintiffs relied were insufficient to support a finding of estoppel. *Id.* at 447–49.

The allegations in this case are quite different. First, the terms of the benefit plan at issue herein are ambiguous. Plaintiff and Defendant Gruntal agree on one definition of "basic monthly earnings," while Defendant UNUM advances a different definition. Both interpretations of the language are reasonable. Second, Plaintiff makes her claim not against the benefit plan, but against Defendant Gruntal, the plan administrator. Any concerns about the "actuarial soundness" of the fund are not implicated by this action, since the award would not be paid out of the corpus of the fund.[8] In addition, there is no question that Defendant Gruntal has the apparent and actual authority to bind itself with express representations. Third, Defendant Gruntal does not dispute that Plaintiff's pleadings are sufficient to state a claim for estoppel. In sum, *Cleary* does not foreclose recognition of an estoppel claim under ERISA in this case.

■ Defendant Gruntal asks the Court to adopt authority from several other circuits which have held that estoppel arguments should not be considered. *See, e.g.,* *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989); *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1264–66 (10th Cir.1988); *Nachwalter v. Christie*, 805 F.2d 956, 959–61 (11th Cir.1986). Each of these cases deals with *oral modifications* of written benefit plans. The Court concurs in their judgment that ERISA prohibits giving effect to parol evidence in the

---

**7.** Defendant Gruntal does not contest the sufficiency of Plaintiff's pleadings with respect to the elements of an estoppel claim. Defendant Gruntal argues only that estoppel is not available under ERISA.

**8.** Plaintiff's remaining claims involve only Defendant Gruntal. There are no claims by Plaintiff against Defendant UNUM in this case at this juncture. The Court expresses no opinion on Defendant Gruntal's third-party claims against Defendant UNUM for indemnity and contribution.

face of an unambiguous writing.[9] That tenet of federal ERISA common law is not, however, relevant to the facts of this case. This writing is ambiguous, and Defendant's alleged representations were not modifications of the writing but interpretations of ambiguous language.

The Court prefers the analyses of other courts of appeals which, consistent with *Cleary,* have permitted estoppel claims. As one court explained:

> It should be noted at the outset that estoppel principles generally apply to all legal actions. It is an exception to that general rule to deny the use of the doctrine. The reasons for the general application of estoppel are simple enough— the doctrine prevents a party from benefitting from its own misrepresentations.

*Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). In the absence of any argument that an award threatens the actuarial soundness of a plan, these courts have held that estoppel claims should be allowed. *See, e.g., id.; Davidian v. Southern California Meat Cutters Union,* 859 F.2d 134, 136 (9th Cir.1988).

As already noted, the resolution of this claim will have no bearing on the actuarial soundness of the benefit fund, since any recovery will be had from Defendant Gruntal, rather than the benefit fund.[10] Further, taking Plaintiff's allegations as true, Defendant Gruntal presumably benefitted from its alleged misrepresentations by obtaining Plaintiff's services in its business.

Given the Court's holding that Plaintiffs' state law claims are preempted, the only possible remedy for this wrong is an estoppel claim under ERISA. Accordingly, Count VII of Plaintiff's Complaint states a claim upon which relief may be granted. Defendant Gruntal's Motion to Dismiss will be denied with respect to this count.

### B. *Breach of Fiduciary Duty*

■ Count VIII alleges that Defendant Gruntal breached the fiduciary duty imposed on it by 29 U.S.C. section 1104(a).[11] Defendant Gruntal counters that Plaintiff seeks money damages for Defendant's alleged breach which are not available under ERISA. *See* 29 U.S.C. § 1132(a). On that basis, Defendant Gruntal asserts that there is no relief available even should Plaintiff succeed, and that this count of the Complaint should accordingly be dismissed. Plaintiff retorts that section 1132(a) authorizes the Court to impose a constructive trust for the benefit of Plaintiff on any money inappropriately obtained by Defendant Gruntal. The decision on whether this count of the Complaint should be dismissed turns on which of these arguments succeeds.

Defendant Gruntal relies on *Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821 (1st Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1989), which held that extracontractual damages are unavailable under either section 1132(a)(2) or section 1132(a)(3).[12] Sec-

---

**9.** In fact, this was the basis for the Court's holding in its second opinion in *Bellino v. Schlumberger Technologies, Inc.,* 753 F.Supp. 394 (D.Me.1990) (Carter, C.J.).

**10.** The Court notes that Plaintiff's claims against Defendant Gruntal are based on representations allegedly made by Gruntal. These claims are factually distinct from Defendant Gruntal's crossclaims against third-party-defendant UNUM, which are based on alleged actions or inaction by Defendant UNUM. Simply, the success of Plaintiff's claims against Gruntal would not necessarily determine the outcome of Gruntal's crossclaims against UNUM. In sum, permitting Plaintiff to proceed on an estoppel theory does not implicate the actuarial soundness of the benefit fund even indirectly through Gruntal's crossclaims.

Without deciding an issue which is not properly before it, the Court notes that *Cleary* impli-

edly contemplates estoppel claims against benefit funds. Thus, even if Plaintiff's claims against Defendant Gruntal were determinative of Gruntal's crossclaims against UNUM, this fact alone would be insufficient to bar Plaintiff's use of an estoppel theory.

**11.** Defendant Gruntal does not, in this motion, contest its alleged status as a "fiduciary" under the statute, or the sufficiency of Plaintiff's allegations that Defendant breached its fiduciary duty. Defendant Gruntal's arguments in support of its Motion to Dismiss are based on the unavailability of remedies.

**12.** The conclusion reached by the Court of Appeals for the First Circuit with respect to section 1132(a)(2) was compelled by the Supreme Court's decision in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The First Circuit

tion 1132(a)(3) permits a participant or beneficiary of an employee benefit plan to bring a civil action

> (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan; ...

29 U.S.C. § 1132(a)(3) (emphasis added). The *Drinkwater* court interpreted "equitable relief" by quoting a leading case from the Court of Appeals for the Ninth Circuit: " '[I]t appears that Congress used the word "equitable" [in § 1132(a)(3) ] to mean what it usually means—injunctive or declaratory relief.' " *Drinkwater*, 846 F.2d at 825 (quoting *Sokol v. Bernstein*, 803 F.2d 532, 538 (9th Cir.1986). Thus, Defendant Gruntal argues, Plaintiff's requested remedy is not among those provided for by section 1132(a)(3).

But Defendant leans too heavily on this *dictum* from *Drinkwater*. The Court of Appeals' holding, and the law of this circuit, is that *extracontractual* damages (*i.e.,* compensatory and punitive damages) are not available under section 1132(a)(3).[13] *Drinkwater*'s *dictum* does not, however, stand for the extremely expansive proposition that "equitable relief" is always and exclusively synonymous with injunctive and declaratory relief. The Ninth Circuit opinion relied upon by the *Drinkwater* court makes abundantly clear, in the sentence immediately following the text quoted in *Drinkwater*, that constructive trusts are included among the equitable remedies approved by Congress in section 1132(a): "The [Senate committee report's definition] of 'appropriate equitable relief' lists three distinct remedies (injunction, constructive trust, and removal), all of which are closely tied to the plan." *Sokol v. Bernstein*, 803 F.2d at 538 (parenthetical in original). The Ninth Circuit, expressly relying on this understanding of congressional intent, has

subsequently concluded that ERISA contemplated the imposition of constructive trusts for the benefit of plan participants and beneficiaries. *See Amalgamated Clothing and Textile Workers Union v. Murdock*, 861 F.2d 1406, 1412–17 (9th Cir. 1988).

The Court must conclude that the Court of Appeals for the First Circuit would reach the same conclusion as that arrived at by the authority upon which it relied in *Drinkwater*. Section 1132(a)(3) includes constructive trusts among its contemplated remedies. The Court does not decide, because the issue is not properly posed by this motion, whether or not a constructive trust is appropriate in this case. Nonetheless, a remedy sought by Plaintiff may be available for the injury alleged by Plaintiff. Defendant Gruntal's Motion to Dismiss Count VIII of the Complaint will be denied.

Accordingly, the Court hereby *GRANTS* Defendant Gruntal's Motion to Dismiss with respect to Counts I, II, III, IV, V, and VI of Plaintiff's Complaint. The Court hereby *DENIES* Defendant Gruntal's Motion to Dismiss with respect to Counts VII and VIII.

So ORDERED.

---

extended the reasoning of *Russell* to apply to section 1132(a)(3).

**13.** The Court notes that Plaintiff has preserved her argument that *Drinkwater* is wrongly decided. Nonetheless, *Drinkwater* is valid prece-

dential authority in this circuit and the Court follows, as it must, the interpretation of that precedent as set forth in the text accompanying this footnote. The decision to reconsider *Drinkwater* must be left to the Court of Appeals.