RICK BROWN *et al.*, Plaintiffs-Appellants, v. DONALD H. VEILE *et al.*,
Defendants-Appellees.

Fifth District   No. 5—88—0161

Opinion filed June 14, 1990.

LEWIS, P.J., dissenting.

Thomas A. LeChien, of Belleville, for appellants.

Myron A. Hanna, of Thompson & Mitchell, of Belleville, for appellees.

JUSTICE HOWERTON delivered the opinion of the court:

After defendants refused to offer plaintiff Rick Brown a lease for a mobile home lot in Arapaho Village Mobile Home Park, plaintiffs filed for a judicial declaration that defendants had a legal duty to of-

fer plaintiffs the lease under the Mobile Home Landlord and Tenant Rights Act (Ill. Rev. Stat. 1987, ch. 80, par. 201 *et seq.*). In addition to declaratory judgment, plaintiffs also joined a claim for money damages under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) for Veile's refusal to offer a lease to an individual interested in buying the mobile home from Brown.

The circuit court of St. Clair County granted summary judgment in favor of defendants on both counts and plaintiffs appeal. We affirm in part and reverse in part.

## I

### THE MOBILE HOME LANDLORD AND TENANT RIGHTS ACT

Count I of plaintiffs' complaint alleged a violation of the Mobile Home Landlord and Tenant Rights Act (hereinafter referred to as the Act) and sought a declaration that defendants had a legal duty to offer Brown a lease for a lot in Arapaho Mobile Home Park.

In his affidavit in support of his motion for summary judgment, defendant Veile stated: (1) Kevin Johnson owned a mobile home that sat on a lot Johnson had leased from Veile in Arapaho Mobile Home Park; (2) Veile was contacted by plaintiff, Brown, who said that he intended to make repairs on Johnson's mobile home, buy it, and then resell it; (3) Veile requires all prospective lessees to complete and submit a written application, and, based on that application, he then obtains a credit report on the applicant and contacts the applicant's prior landlord and the references listed; (4) Brown did not request a lease from Veile; (5) Veile told Brown that the mobile home would have to be removed from Arapaho Mobile Home Park; (6) later, Veile was told by Brown that he or Manufactured Housing Specialist had bought Johnson's mobile home; (7) by letter, Veile directed Brown and Manufactured Housing Specialist to remove the mobile home from the mobile home park.

Brown filed a counteraffidavit stating: (1) Brown had bought Johnson's mobile home; (2) before closing, Brown had requested a lease from Veile, but Veile refused to give him one; (3) Manufactured Housing Specialist entered into a tentative agreement to sell the mobile home to Doy Tuma; (4) Tuma's application for a lease from Arapaho Village Mobile Home Park was denied; (5) Tuma, however, was granted a mobile home lease by Arapaho Village Mobile Home Park for a different mobile home on a different lot.

■ Section 6(a) of the Act requires mobile home park owners to

offer a written lease to each "present and future tenant." (Ill. Rev. Stat. 1987, ch. 80, par. 206(a).) A "tenant" is either a "person who occupies a mobile home rental unit for dwelling purposes" or a person who occupies "a lot on which he parks a mobile home for an agreed upon consideration." Ill. Rev. Stat. 1987, ch. 80, par. 203(e).

Brown argues that he is a "future tenant" under the Act because: (1) he was the purchaser of Johnson's choice; (2) he requested a lease from Veile; and (3) he tendered rent. Therefore, Brown concludes, Veile has a legal duty to offer Brown a lease. Ill. Rev. Stat. 1987, ch. 80, par. 206(a).

Veile argues, however, that even if Brown attempted to tender rent to Veile, Veile had no obligation to accept it because he considered Brown a trespasser. Veile claims that Brown is not a future tenant under the Act because Veile never agreed to accept Brown as a tenant. Veile further asserts that because Brown did not obtain a lease prior to closing, he is in violation of section 24 of the Act (Ill. Rev. Stat. 1987, ch. 80, par. 224(a)) and is, therefore, not entitled to relief under the Act.

■ Section 24 of the Act enjoins and restrains mobile home park owners from

"prohibiting, limiting, restricting, obstructing or in any manner interfering with the freedom of any mobile home owner to:

(a) Sell his mobile home to a purchaser of his choice, provided that the park owner shall be allowed to promulgate any general qualifications or lawful restrictions on park residents which limit or define the admission of entrants to the park. *The purchaser, prior to closing, must obtain a written and signed lease.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 80, par. 224(a).

■ The first issue for us to resolve is whether plaintiffs are within the coverage of the Act even though they did not obtain a written and signed lease prior to closing. We believe they are, because they alleged that they tried to get a lease. To construe the Act to extend protection only to those mobile home buyers who obtain a written and signed lease is absurd. A buyer who has a lease ordinarily does not need the protection of the Act.

Here would be the effect of defendants' contention that plaintiff is not protected by the Act—if a buyer cannot get a lease, the Act extends protection, but, to get protection, the buyer first has to get a lease; the net result is: "if you do not have a lease, you need protection; but, you cannot get protection unless you have a lease."

Such a construction would have made the Air Force proud in Jo-

seph Heller's *Catch 22*. Such a construction would allow the mobile home park owner to frustrate the entire Act by saying, "In order to get me, you have got to get me to sign a lease, and I am not doing it." That kind of construction would be more than a gloss; it would amount to a tough, amber resin, encasing the mobile home park owner, rendering him impervious to challenge, just as prehistoric insects have been encased and preserved, impervious to challenge for millions of years. The law has no particular interest in mummification.

The second issue for us to resolve is whether plaintiff is within the coverage of the Act. It must be remembered that Johnson, not plaintiff, was the seller, and therefore, it is argued that the coverage of the Act is to Johnson, not plaintiff. The circuit court held that since plaintiffs never were tenants, defendant owed no duty to them under the Act.

We disagree. Plaintiff alleges that he is a future tenant within the provisions of the Act. The Act prohibits defendant from obstructing the freedom of Johnson to sell his mobile home. If Johnson cannot sell to plaintiff, to whom can he sell? Another? If he did try to sell to another, what would keep defendant from refusing to accept the other as a tenant? Nothing. Except the Act itself. Unless the coverage of the Act is extended to a buyer, what can happen in practice is the Johnsons of the world must sell their mobile home, perhaps because of graduation from college, or discharge from service, or transfer to another job, or perhaps because of buying a house. To confer standing only on Johnson means Johnson has to use some funds other than the equity in the mobile home to move, or buy a house. We are mindful of the economic difficulties that people who live in mobile homes sometimes have. We know further that the potential for an economic squeeze that can be placed on them by the mobile home park owner so often will bring the Johnsons of the world to accept the mobile home park owner's terms, "Sell to me at this lower price and get it over with, or get out and sue me." It is this analysis that impels us to the conviction that the legislature intended to give plaintiff standing to sue under the Act. Anything less would grant a mobile home owner the ability to obstruct a sale.

■ The question in this case is whether the refusal to give a lease was reasonable. We do not believe that the legislature promulgated section 24 so that a mobile park owner could unreasonably refuse to offer a lease to a party. To allow a park owner to unreasonably refuse to tender a lease to a buyer would allow park owners to defeat the statute.

■ Here, Veile's affidavit asserts that Brown did not request a

518

lease. On the other hand, Brown's affidavit asserts that he did request a lease from Veile, and further asserts that he met all of the general qualifications and lawful restrictions for tenancy in Arapaho Village Mobile Home Park. Therefore, whether Brown requested and was refused a lease and whether Brown met all of defendants' requirements for tenancy are genuine issues of material fact. It is the determination of these issues which may well establish whether Brown is a "future tenant" under the Act and, resultantly, whether Veile would have a duty to offer Brown a lease pursuant to section 6(a) of the Act. Ill. Rev. Stat. 1987, ch. 80, par. 206(a).

Because these genuine issues of material fact exist, the decision of the circuit court granting summary judgment on count I was improper and is, therefore, reversed.

## II

THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

Count II of plaintiffs' complaint sought money damages and alleged that defendant engaged in a deceptive business practice by refusing to grant a lease to Tuma in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 et seq.).

In its amended order, the circuit court did not give a factual basis for its decision granting summary judgment, but simply stated that "judgment is entered for defendants *** on Count II." Because we find that plaintiffs lack standing to bring a cause of action under the Consumer Fraud and Deceptive Business Practices Act, we affirm the court's decision.

The purpose of the Consumer Fraud and Deceptive Business Practices Act is "to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." (Ill. Rev. Stat. 1987, ch. 121½, par. 261 et seq.) Whether a party has standing to sue under the Consumer Fraud and Deceptive Business Practices Act is dependent upon whether that party is a "consumer." (People ex rel. Fahner v. Hedrich (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924.) Although the Consumer Fraud and Deceptive Business Practices Act provides a right of action to "[a]ny person who suffers damage as a result of a violation" (Ill. Rev. Stat. 1987, ch. 121½, par. 270a), the supreme court of Illinois has held that only "consumers" have standing to sue under the statute. Steinberg v. Chicago Medical School (1977), 69 Ill. 2d 320, 371 N.E.2d 634.

■ A "consumer" is "any person who purchases or contracts for the purchase of merchandise *not for resale in the ordinary course of his trade or business* but for his use or that of a member of his household." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 121½, par. 261(f).) Tenants of a mobile home park are consumers for purposes of the Consumer Fraud and Deceptive Business Practices Act. *People ex rel. Fahner v. Testa* (1983), 112 Ill. App. 3d 834, 445 N.E.2d 1249.

■ We find in this case, however, that plaintiffs cannot be defined as consumers. Instead, they are dealers in preowned mobile homes, buying them, and offering them for resale in the ordinary course of their trade or business—a finding of the circuit court supported by the record and not challenged as erroneous by plaintiffs on appeal. Accordingly, because plaintiffs are not consumers and because only consumers can bring an action under the Consumer Fraud and Deceptive Business Practices Act, plaintiffs lack standing and summary judgment on count II was proper.

For the above-stated reasons, summary judgment on count I is reversed, summary judgment on count II is affirmed, and this cause is remanded to the circuit court for further proceedings.

Affirmed in part; reversed in part and remanded.

GOLDENHERSH, J., concurs.

PRESIDING JUSTICE LEWIS, dissenting:
I respectfully dissent. The trial court was correct in dismissing count I, which dealt with the Mobile Home Landlord and Tenant Rights Act (the Act) (Ill. Rev. Stat. 1987, ch. 80, par. 201 *et seq.*).

Under the title of the Act it is stated: "An act concerning Mobile Home Parks and the rights of Mobile Home owners and Mobile Home Residents." The Act is replete with the rights and obligations of both the tenant and owner and, in fact, the last paragraph of section 21 (Ill. Rev. Stat. 1987, ch. 80, par. 221), entitled "Remedies, tenants," says:

> "The tenant may sue to enforce all Sections of this Act and the court may award damages or grant any injunctive or other relief."

In the next paragraph, section 22 (Ill. Rev. Stat. 1987, ch. 80, par. 222) of the Act, the remedies of the park owner are defined.

The majority states that the Act prohibits defendant from obstructing the freedom of Johnson (tenant) from selling his mobile home. In this it is absolutely correct. However, the majority goes on

to say that because of the economic difficulties that people who live in mobile homes have, someone else has standing to bring the law suit. I cannot accept this line of reasoning. The legislature by enacting this Act set forth the rights and responsibilities of the park owner and the tenant or resident.

Section 24 of the Act (Ill. Rev. Stat. 1987, ch. 80, par. 224) provides:

"Sale of Mobile Home. The park owner shall be enjoined and restrained from prohibiting, limiting, restricting, obstructing or in any manner interfering with the freedom of any mobile home owner to:

(a) Sell his mobile home to a purchaser of his choice, provided that the park owner shall be allowed to promulgate any general qualifications or lawful restrictions on park residents which limit or define the admission of entrants to the park. The purchaser, prior to closing, must obtain a written and signed lease." (Ill. Rev. Stat. 1987, ch. 80, par. 224(a).)

This section specifically grants any mobile home owner the freedom to sell to the purchaser of his choice. However, this section also requires that a purchaser *must* obtain a lease *prior to closing*, from the park owner. Here, Johnson was not prohibited from selling his mobile home to the plaintiff, but, according to the plaintiff's affidavit, the plaintiff had bought Johnson's mobile home without obtaining a lease before closing. The reason for the plaintiff's failure to obtain a lease prior to closing is irrelevant, and the important fact to this case is that the plaintiff did not comply with the statute in obtaining a lease, and without a lease, he was not a tenant under the Act. Therefore, since the plaintiff was not a tenant, either present or future, the plaintiff had no standing to sue. If the plaintiff had requested a lease as stated in the plaintiff's affidavit, and had been refused a lease by the defendant before closing, then Johnson should have challenged the refusal at that time as prohibiting Johnson's right to sell to a purchaser of his choice. This Johnson did not do.

Section 6, upon which the majority relies, discusses the obligation of a park owner to offer a written lease and it states in part:

"Obligation of Park Owner to Offer Written Lease. No person shall offer a mobile home or lot for rent or sale in a mobile home park without having first exhibited to the prospective tenant or purchaser a copy of the lease applicable to the respective mobile home park.

(a) The park owner shall be required to offer to each present and future tenant a written lease for a term of not less than 12

months, unless the parties agree to a different term subject to existing leases which shall be continued pursuant to their terms." (Ill. Rev. Stat. 1987, ch. 80, par. 206(a).)

This provision is meant to protect the parties so they know the exact terms of the lease. Even if we assume that no lease was offered it makes no difference in this case. It is Johnson, the tenant, who needs and gets protection under the Act. Section 6 protects persons wanting to rent or buy by allowing them to know the exact terms of the written lease.

In discussing the constitutionality of the Act in question, the court in *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 95, 438 N.E.2d 924, 932, stated:

"A reading of the Mobile Home Landlord and Tenant Act indicates that the purpose of sections 6 and 9 of the Act is to protect tenants from landlords who would take unfair advantage of a tenant by raising rental fees and adding charges after the tenant has expended funds by affixing a dwelling onto the rented premises."

It is the tenant who is given protection and can sue to have those rights protected. The plaintiff in this case was not a present or future tenant, and thus, he was not entitled to the rights afforded under the Act.

Therefore, I would affirm the trial court as to count I.