**P.I.A. MICHIGAN CITY, INC., Plaintiff,**

v.

**NATIONAL PORGES RADIATOR CORP., et al., Defendants.**

**No. 91 C 4039.**

United States District Court, N.D. Illinois, E.D.

Jan. 15, 1992.

Filed Jan. 17, 1992.

Opinion on Denial of Reconsideration April 9, 1992.

1422

Richard J. Gray and R. Douglas Rees, Jenner & Block, Chicago, Ill., for P.I.A. Michigan City, Inc.

Donald Scott Solomon, Edelstein & Edelstein, P.C., Chicago, Ill., for Nat. Porges Radiator Corp. and James Porges.

Michael T. Reid, Halfpenny, Hahn & Roche, Chicago, Ill., for Automotive Wholesalers of Illinois and Trustees of Automotive Wholesalers Group Ins. Fund.

Michael T. Reid, Halfpenny, Hahn & Roche, Louis C. Roberts and Daniel John McMahon, Peterson & Ross, Chicago, Ill., for Principal Mut. Life Ins. Co.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Presently pending is defendant Principal Mutual Life Insurance Company's motion to dismiss. On such a motion, all the well-pleaded allegations of the complaint are assumed to be true and all reasonable inferences from the facts alleged are drawn in favor of plaintiff. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). The motion will be granted only if defendant can demonstrate that the facts alleged cannot support a claim. *See id.* at 1039–40.

Plaintiff P.I.A. Michigan City, Inc. d/b/a Kingwood Hospital ("PIA") provided medical services to Earl Wilson from May 12 through June 11, 1990. Wilson was employed by National Porges Radiator Corporation ("National Porges").[1] National Porges provided health insurance for its employees through defendant Automobile Wholesalers of Illinois ("AWOI") which had a Group Medical Plan (the "Plan") as part of its Automobile Wholesalers Group Insurance Fund (the "Fund"). Defendant Principal Mutual Life Insurance Company ("Principal Mutual") underwrote the health insurance. The Trustees of the Fund and James Porges ("Porges"), president of National Porges, are also named as defendants.

At the time Wilson was first admitted to PIA on May 12, 1990, an employee of PIA contacted AWOI and Principal Mutual to obtain authorization to provide medical treatment. On May 12, Barb at Principal Mutual telephonically approved nine days of treatment. On May 14, Patti Wanless at AWOI telephonically verified that the Plan covered 80% of Wilson's treatment costs up to $5,000 and 100% of the amount over $5,000. On May 20, Tricia Hoffman of Principal Mutual telephonically approved continuing Wilson's treatment until May 29. Dana White of Principal Mutual verified this by a letter dated May 22. On May 29, Hoffman telephonically authorized treatment until June 5 and White again followed up with written approval. On June 4 and 7, the same Principal Mutual employees approved treatment through June 9.

On June 8, AWOI first informed PIA that National Porges had failed to pay its May premium and that National Porges had withdrawn from the Plan. Porges had called AWOI on May 29 to inform AWOI National Porges would not be paying the May premium and instead had obtained insurance for its employees through Pan American Life Insurance Company ("Pan American"). The same day she learned of this change, a PIA employee telephoned Pan American and discovered Wilson's treatment was not covered under the new medical insurance policy. Prior to being informed by Michael O'Neil of PIA on June 8, Wilson had not known that his employer had changed Wilson's medical coverage. Also, throughout this period of time, payments for the Group Medical Plan were being deducted from Wilson's pay. On June 11, the last day of Wilson's treatment, Porges informed O'Neil of PIA that Na-

---

1. Neither Wilson nor National Porges are parties in this case.

tional Porges had no intention of paying for any of Wilson's treatment. Since that time, PIA has made demands for payment on all of the defendants and the demands have been refused.

On February 6, 1991, Wilson assigned any claim for benefits that he may have to PIA. PIA's complaint contains three counts. The first two counts are both brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and are brought as the assignee of Wilson. Count I is a claim for breach of fiduciary duty and Count II is based on equitable estoppel. Count III is a claim brought directly by PIA and is a pendent state law claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.* Principal Mutual moves to dismiss all the claims against it. It argues that Count I must fail because Principal Mutual is not a fiduciary; Count II because ERISA does not recognize a claim for equitable estoppel; and Count III because plaintiff is not a consumer or, alternatively, because there is no basis for retaining jurisdiction over the state law claim. The other defendants have not moved to dismiss any claims, though they have indicated in court that certain rulings on Principal Mutual's motion could have an effect on the vitality of the claims against the other defendants.

■ As to Count II, Principal Mutual argues that ERISA does not permit provisions of plans to be modified by equitable estoppel.[2] It is true that, under ERISA, promissory estoppel generally is not recognized as a ground for orally modifying a written benefit plan. *See Rizzo v. Caterpillar, Inc.*, 914 F.2d 1003, 1007 n. 1 (7th Cir.1990). The Seventh Circuit, however, has also held that equitable estoppel is applicable under certain circumstances. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990). *See also Reid v.*

*Gruntal & Co.*, 760 F.Supp. 945, 950–51 (D.Me.1991). Specifically, the Seventh Circuit held that "estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans." *Black*, 900 F.2d at 115. The rationale of that holding is that estoppel should be recognized, as it is generally recognized in other areas of the law, unless applying estoppel would threaten the actuarial soundness of an ERISA plan and thus harm persons other than the one against whom it is appropriate to apply estoppel. *See id.; Reid*, 760 F.Supp. at 951. Thus, estoppel generally will not be applied when dealing with funded pension plans, but will often be applicable when dealing with unfunded welfare benefit plans.

■ Unlike *Black*, the present case involves a multi-employer plan. Like *Black*, however, this case involves an unfunded welfare benefit plan. Presently before the court is the claim against the insurer for the plan.[3] Since the claim under consideration is not a claim against the Fund itself, granting relief to plaintiff would not directly threaten the actuarial soundness of the Fund. Principal Mutual argues that granting relief would affect other employees because awarding benefits for Wilson's medical expenses would affect the actuarial determination of future rates to be charged to the Fund. There is, however, a qualitative difference between simply affecting future rates based on actuarial projections and actually threatening the actuarial soundness of a Fund. In any event, there is nothing alleged in the complaint that would indicate awarding the $25,766 of benefits claimed would affect future rates so as to make it impossible for participating employers to continue to afford medical coverage for their employees. Also, if plaintiff should succeed on its claim, the amount awarded is the proper amount if National Porges had continued with this insurer. Any effect on rates would be the

**2.** As do both the parties involved in this motion, it will be assumed that the facts alleged support applying equitable estoppel to the extent ERISA permits application of such a legal principle.

**3.** Although now the former insurer for National Porges's employees, it must be recognized that Principal Mutual is apparently still the insurer for other employers participating in AWOI's Group Medical Plan.

same as would have happened if National Porges had remained in the Group Medical Plan. Therefore, any effect on rates is neither unexpected nor unusual and is an expense that should have been actuarially anticipated by the insurer. This is unlike a situation in which estoppel results in an award of benefits in excess of what the coverage ordinarily provided.

The present situation is one in which principles of estoppel can be applied under the federal common law of ERISA. Count II will not be dismissed.

The question as to Count I is whether Principal Mutual is a fiduciary under the facts alleged in the complaint. Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

In making a claim under ERISA for violation of fiduciary duties, *see* 29 U.S.C. §§ 1104, 1132(a)(3), it is not sufficient merely that the defendant be a fiduciary; the alleged misconduct must also fall within the area of conduct in which the defendant is a fiduciary. *See Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131–32 (7th Cir.1983); *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.,* 713 F.2d 254, 259 (7th Cir. 1983). For example, if a defendant is only a fiduciary with respect to investing assets of a plan, there can be no fiduciary violation claim against such a defendant for failing to pay a benefit, unless, perhaps, such failure to pay is related to the violation of a duty regarding investing assets.

A copy of the Group Medical Plan is attached as an exhibit to the complaint. The Plan states that "We [Principal Mutual] will administer payment of all medical claims under both parts of the plan." Consistent with this provision, it is alleged in the body of the complaint that Principal

Mutual "exercis[ed] its discretion regarding insurance coverage under the Group Medical Plan." Also, it is alleged that Principal Mutual advised PIA as to coverage for Wilson and authorized continued treatment. Principal Mutual is a fiduciary because it has discretionary authority or responsibility in the administration of the plan, specifically in approving or denying claims for benefits. *See Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162, 1165 (C.D.Cal.1980). *See also American Federation of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of United States,* 841 F.2d. 658, 662–63 (5th Cir.1988); *Newell v. Prudential Insurance Co. of America,* 904 F.2d 644, 653 (11th Cir.1990).

Principal Mutual argues that it did not violate any fiduciary obligation because it had no duty to notify Wilson either that National Porges had failed to pay the premium or that it had discontinued the policy. In *Martz v. Union Labor Life Insurance Co.,* 757 F.2d 135, 139–41 (7th Cir.1985), the Seventh Circuit held that, under Illinois law, an insurer providing group coverage has no duty to notify individual insureds of the termination of coverage unless state law, the policy, or some special circumstance imposes such a duty on the insurer. The rationale for this is that the insurer has a relationship only with the policyholder and it is the policyholder who has a duty to notify individual insureds. While *Martz* is expressly stated to be a decision under Illinois law, there is no reason for a different rule under ERISA.

Applying this rule to the present case, there is no Illinois law requiring the insurer to send notice of cancellation to the individual insured. As held in *Martz,* 757 F.2d at 141, the Illinois Insurance Code instead places responsibility for notifying the individual insured on the group policyholder. Also, there is nothing in the policy requiring Principal Mutual to provide notice. To the contrary, as to "continuation rights," the policy provides that notice to the individual is to be sent by the employ-

er.[4] Exhibit A at 68. There is nothing alleged in the complaint to establish that Principal Mutual had a fiduciary duty to send notice to National Porges's covered employees, including Wilson, when National Porges failed to continue the policy.

If plaintiff only alleged a failure to send notice to Wilson upon National Porges's failure to pay the May premium or upon National Porges's decision to discontinue the policy, plaintiff would have no fiduciary duty claim against Principal Mutual. Plaintiff, however, alleges that it, on behalf of Wilson, specifically inquired as to whether Wilson's treatment would be covered by the Group Medical Plan. As the administrator of claims under the Plan, with discretion to grant or deny claims, Principal Mutual had a fiduciary obligation to act with care, skill, prudence, and diligence in responding to questions about and claims for coverage. That duty is implicated by plaintiff's allegations that Principal Mutual incorrectly informed it that Wilson's treatment was covered under the Plan. Count I, therefore, sufficiently alleges that Principal Mutual is a fiduciary with respect to the alleged misconduct. The motion to dismiss Count I will be denied.

As to Count III, Principal Mutual argues that denial of an insurance claim by an insurer is not the type of transaction to which the Consumer Fraud Act applies.[5] It is well-settled that the sale of insurance is a service to which the protections of the Consumer Fraud Act apply. *Petersen v. Allstate Insurance Co.*, 171 Ill.App.3d 909, 121 Ill.Dec. 787, 790, 525 N.E.2d 1094, 1097 (1st Dist.), *appeal denied*, 122 Ill.2d 593, 530 N.E.2d 263 (1988) (quoting *Fox v. Industrial Casualty Insurance Co.*, 98 Ill. App.3d 543, 54 Ill.Dec. 89, 424 N.E.2d 839 (1st Dist.1981)). Citing *McCarter v. State Farm Mutual Automobile Insurance Co.*, 130 Ill.App.3d 97, 85 Ill.Dec. 416, 419, 473

N.E.2d 1015, 1018 (3d Dist.1985), Principal Mutual argues that the Consumer Fraud Act applies only to *sales* of insurance, not to claims related to the *adjustment* of insurance claims. Principal Mutual, however, misreads *McCarter*. *McCarter* was a claim against an insurance company by a third party who was injured by the insured; it did not involve a claim against the insurance company by the insured himself. Since the Consumer Fraud claim was not a claim by the purchaser of the insurance, it was held that McCarter did not have standing to bring a Consumer Fraud claim because he was not a consumer vis-a-vis the insurer. A more recent Illinois Appellate Court case so reads *McCarter* and specifically holds that an insured may bring a claim against his or her insurer based on deception in the adjustment of a claim and that, under such circumstances, the insured is a consumer with standing under the Consumer Fraud Act. *Elder v. Coronet Insurance Co.*, 201 Ill.App.3d 733, 146 Ill. Dec. 978, 986–87, 558 N.E.2d 1312, 1320–21 (1st Dist.1990), *appeal withdrawn*, 139 Ill.2d 594, 159 Ill.Dec. 106, 575 N.E.2d 913 (1991). Principal Mutual's argument that the Consumer Fraud Act does not apply to the adjustment of insurance claims is without merit.

Principal Mutual also argues, however, that, as a third party beneficiary of the insurance contract between Wilson and Principal Mutual, PIA lacks standing to bring a Consumer Fraud claim. This argument is supported by *McCarter's* holding that a third party seeking payment from an insurance company lacks standing because not a consumer. Principal Mutual's position is also supported by *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp.*, 652 F.Supp. 858, 860–61 (N.D.Ill.1986), which holds that corporate employees covered by directors'

---

**4.** *Under the policy, "continuation rights" refer to the right to continue the policy after death, reduction in work hours, termination of employment, entitlement to Medicare, change in status of a dependent, or change in policies where a preexisting condition limitation might apply. There is no allegation in the present case that any such situation existed. Thus, this notice provision of the policy is not directly* applicable to this case. It is cited as an indication that the policy does not contemplate notice by Principal Mutual.

**5.** The court assumes, as do the parties, that plaintiff has adequately alleged an unfair or deceptive practice.

and officers' liability policies of the corporation have no standing to bring a Consumer Fraud claim because they are only beneficiaries of the policy, not purchasers who would have standing as consumers. The holdings of *McCarter* and *National Union* are based on the premise that standing under the Consumer Fraud Act is limited to consumers.

The Act provides that "[a]ny person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person." Ill.Rev.Stat. ch. 121½, ¶ 270a(a). A "person" is defined as including "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, partner, officer, director, member stockholder, associate, trustee or cestui que trust thereof." *Id.* ¶ 261(c). The general definition of unlawful practices under the Act also makes no reference to defrauding or deceiving consumers.[6] *See id.* ¶ 262. Since business entities are defined as persons and since ¶ 270a(a) provides that "any person" damaged by a violation of the Act may bring an action pursuant to the Act, there does not appear to be any requirement that a person bringing a claim under the Act be a consumer.

In *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977), a rejected applicant to the Chicago Medical School brought a putative class action alleging fraud and breach of contract in that the school relied on unpublished criteria to evaluate applicants. The Illinois Supreme Court rejected the Consumer Fraud claim stating the following:

That the Consumer Fraud and Deceptive Business Practices Act (Ill.Rev.Stat. 1973, ch. 121½, par. 261 *et seq.*) is inapplicable is patent from the title of the Act: "An Act to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce * * *." A "consumer" is "any person who purchases or contracts for the purchase of merchandise * * *." (Ill.Rev.Stat.1973, ch. 121¼, par. 261(e).) Obviously, plaintiff and those whom he represents were not consumers.

*Id.* 13 Ill.Dec. at 703, 371 N.E.2d at 638.

Although this passage does not expressly limit Consumer Fraud claims to being brought by consumers,[7] *Steinberg* has subsequently been cited for that proposition. *See, e.g., Brown v. Veile,* 198 Ill.App.3d 513, 144 Ill.Dec. 708, 712, 555 N.E.2d 1227, 1231 (5th Dist.1990); *McCarter,* 85 Ill.Dec. at 419, 473 N.E.2d at 1018; *National Union,* 652 F.Supp. at 861. *See also First Comics, Inc. v. World Color Press, Inc.,* 884 F.2d 1033, 1040 (7th Cir.1989), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990). By 1989, a number of cases had held that the Consumer Fraud Act was limited to consumers or situations involving competitive injury or a general effect on consumers. A minority of cases had held otherwise. *See id.* at 1039 (collecting cases). None of these cases, however, were Illinois Supreme Court cases. In 1989, the Seventh Circuit held that a claim under the Act required proof that "misconduct injured consumers generally." *Id.* at 1040. Effective January 1, 1990, and applicable to the present case which involves conduct occurring in 1990, the General Assembly amended the Act to specifically provide: "Proof of a public injury, a pattern, or an effect on consumers general-

---

**6.** The Act defines a consumer as meaning "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." Ill.Rev.Stat. ch. 121½, ¶ 261(e). Certain specific practices prohibited by the Act are limited to transactions with consumers, which would explain the need for defining consumer without standing being limited to consumers. *See, e.g., id.* ¶ 262B.

**7.** To the contrary, relying on the title of the Act as did the Illinois Supreme Court, implies that businessman also have standing under the Act. In *Steinberg,* the Illinois Supreme Court may have found it to be even more obvious that plaintiffs were not businessman and therefore found it unnecessary to expressly state that plaintiffs were not businessman in addition to not being consumers.

ly shall not be required." Ill.Rev.Stat. ch. 121½, ¶ 270a(a). While that amendment clearly eliminates any requirement of proving an effect on consumers generally, it does not expressly overrule any requirement that the person bringing suit be a consumer. A recent decision of the Illinois Supreme Court, while involving a claim brought by the Cook County State's Attorney for which different standing rules apply, contains discussion indicating that the Illinois Supreme Court intends to read the Consumer Fraud Act broadly and not limit standing to consumers. *See People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill.2d 1, 165 Ill.Dec. 655, 667–670, 585 N.E.2d 51, 63–68 (Ill.1991). Also a recent Illinois Appellate Court case expressly holds that standing under the Act is not limited to consumers. *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill.App.3d 1073, 158 Ill.Dec. 185, 191, 573 N.E.2d 1370, 1376 (5th Dist.), *appeal denied*, 141 Ill.2d 561, 162 Ill.Dec. 510, 580 N.E.2d 136 (1991). *Accord Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F.Supp. 869, 877–78 (N.D.Ill. 1990). *Contra Brown*, 144 Ill.Dec. at 712, 555 N.E.2d at 1231; *Storck USA, L.P. v. Levy*, 1991 WL 60562 at *3–4 (N.D.Ill. April 15, 1991). *Compare Elder*, 146 Ill.Dec. at 986–87, 558 N.E.2d at 1320–21 (ambiguous as to whether standing limited to consumer, but expressly holding defendant need not be person from whom products were purchased). It is found that, if given the opportunity, the Illinois Supreme Court would hold that standing under the Consumer Fraud Act is not limited to consumers.[8] The motion to dismiss the Count III claim against Principal Mutual will be denied.

IT IS THEREFORE ORDERED that defendant Principal Mutual's motion to dismiss is denied. Principal Mutual shall answer the complaint within two weeks of the date of this order. Status hearing will be held on January 30, 1992 at 9:15 a.m.

### MEMORANDUM OPINION AND ORDER ON DENIAL OF RECONSIDERATION

Defendant Principal Mutual Life Insurance Company has moved this court for partial reconsideration of the January 15, 1992 order denying Principal Mutual's motion to dismiss the claims against it. In the January 15 Order, it was held that plaintiff had adequately alleged three claims against Principal Mutual: (a) an Employee Retirement Income Security Act of 1974 ("ERISA") claim for breach of fiduciary duty; (b) an ERISA equitable estoppel claim; and (c) an Illinois Consumer Fraud and Deceptive Business Practices Act claim. Principal Mutual argues that the equitable estoppel claim is not viable in light of a Seventh Circuit decision issued subsequent to the January 15 Order. *See Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir.1992).

As was discussed in the January 15 Order at 4–6, the Seventh Circuit held in *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990), that, under certain circumstances, equitable estoppel principles are applicable in ERISA disputes. Following *Black*, this court held that the key factor in determining whether application of equitable estoppel principles could be applied was whether recognizing such principles in the particular case would affect the actuarial soundness of the fund involved. It was also recognized that the actuarial soundness of a fund was less likely to be affected if the claim involved an unfunded welfare benefits plan than if it involved a funded pension benefits plan. Additionally, it was recognized that equitable estoppel is less likely to be applied to a multiemployer plan than a plan of a single employer. The present case involves a multiemployer welfare benefits plan. On the facts alleged in the complaint, it was held that the actuarial soundness of the fund was not likely to be threatened by recognizing plaintiff's equitable estoppel claim against Principal Mutual and therefore the claim could be pursued.

---

**8.** If prior to the conclusion of this litigation, the Illinois Supreme Court or the Seventh Circuit holds to the contrary, the parties should promptly bring such an opinion to the attention of the court.

*Pohl* involves a claim under a welfare benefits plan. It is not stated whether the plan is that of a single employer or multiple employers. Like the claim against Principal Mutual, *Pohl* involves a claim against a plan administrator. Unlike the present case, Pohl did not invoke any theory of estoppel. Pohl instead relied on a claim of negligent misrepresentation. The Seventh Circuit noted that Pohl's claim had similarities to an estoppel claim, but was not "quite" the same. *See Pohl,* 956 F.2d at 127. While holding that Pohl's claim was preempted to the extent it was a state law claim, the Seventh Circuit also indicated that it would fail as a federal common law claim under ERISA because ERISA does not recognize oral modifications of terms of welfare or pension benefits plans. *Id.* at 128.

In stating that ERISA does not recognize oral modifications of the written terms of a benefits plan, *Pohl* cites *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). That case, however, only holds that oral variances from the written terms of a pension plan are not permitted. *Pohl* also cites *Nachwalter v. Christie,* 805 F.2d 956, 960–61 (11th Cir. 1986), and *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296–97 (5th Cir.1989). *Nachwalter* [1] and *Cefalu* [2] also involve only pension benefits claims. *Musto v. American General Corp.,* 861 F.2d 897, 910 (6th Cir.1988), which *Pohl* cites as a *"see also,"* involves retirement benefits given in the form of continuing medical coverage.[3] In any event, *Pohl* expressly refers to both welfare and pension plans, though it is unclear if the statement regarding oral modifications should be considered a holding or *dicta.* It will be assumed to be a holding. Nevertheless, *Black,* which is not cited in *Pohl,* holds that equitable estoppel can be applied under certain circumstances to override the written terms of welfare benefits plans. Given the more extensive discussion of the issue in *Black,* than in *Pohl,* including explicit discussion of the differences between pension and welfare plans, *Black* should still be considered good law in the Seventh Circuit, though its potential for being overruled must be recognized.

But even if *Black* has been overruled and the law in the Seventh Circuit is that no type of written benefits plan can be orally modified, that is not what is alleged in this case. Under the written terms of the medical benefits plan, Earl Wilson's treatment by plaintiff was a covered service. The statements of Principal Mutual employees, which were not limited to oral statements but were also verified in writing, were not inconsistent with the written terms of the plan. The reason Wilson's treatment was not covered was not because of an inconsistency with the terms of the plan, but because Wilson's employer discontinued paying the premiums for the plan. No written modification would have been required for coverage to exist; all that would have been required was for Wilson's employer to pay the premiums

---

1. Subsequent Eleventh Circuit cases essentially hold that the rule stated in *Nachwalter* also applies in cases involving welfare benefits. *See Kane v. Aetna Life Insurance,* 893 F.2d 1283, 1285–86 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) (distinguishing *Nachwalter* as being limited to modifications, but otherwise indicating, without discussion, that *Nachwalter* would apply to this welfare benefits case); *National Cos. Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.,* 929 F.2d 1558, 1571–72 (11th Cir.1991) (same).

2. Subsequently, in *Rodrigue v. Western & Southern Life Insurance Co.,* 948 F.2d 969, 971 (5th Cir.1991), the Fifth Circuit followed *Cefalu* and held that promissory estoppel does not apply to orally modify a welfare benefit plan. More recently, however, in a welfare benefit case, the Fifth Circuit indicated it is still an open question in the Fifth Circuit whether the effect on the solvency of a plan is a factor to consider when there are possible oral modifications. *See Williams v. Bridgestone/Firestone, Inc.,* 954 F.2d 1070 (5th Cir.1992). That case also indicates that it is an open question in the Fifth Circuit whether the interpretation/modification distinction of *Kane, supra,* and its progeny will be adopted by the Fifth Circuit.

3. In *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1299–1300 (6th Cir.1991), the Sixth Circuit distinguished *Nachwalter* as being a pension benefits case and held that equitable estoppel can apply under some circumstances when the case involves welfare benefits.

**1430**

due for the group policy.[4] Therefore, even if oral modifications of written plans are unenforceable no matter what the circumstances and equities involved, it may be that an application of that rule is not required by plaintiff's allegations of equitable estoppel.[5]

Also, even if the equitable estoppel claim were dismissed, Principal Mutual does not presently contend that plaintiff fails to allege an adequate fiduciary duty claim.[6] The case against Principal Mutual would still continue, including the allegations of misstatements as to coverage, but under the guise of a fiduciary duty claim.

The motion for reconsideration will be denied. It was permissible for Principal Mutual to seek reconsideration in light of the decision in *Pohl.* See *Turner v. Chicago Housing Authority,* 771 F.Supp. 924, 926 n. 2 (N.D.Ill.1991). Defendants may further address this matter, including any further developments of the case law, in the parties' pretrial order and any accompanying trial brief or summary judgment motion.

IT IS THEREFORE ORDERED that Principal Mutual's motion for reconsideration of the court's January 15, 1992 Order is denied.

---

4. One inference that can be drawn from the facts alleged in the complaint is that the employer had yet to pay the premium and that Principal Mutual simply assumed a payment would be forthcoming, not that the employer was withdrawing from the plan. It is also possible that the employer did not decide until after the beginning of Wilson's treatment that the employer was going to switch to another plan.

5. The Eleventh Circuit has held that estoppel can apply based on interpretations of plans, contrasting interpretations with modifications or amendments. *Kane,* 893 F.2d at 1285–86; *St. Joseph's,* 929 F.2d at 1571–72. Applying this rule, *Psychiatric Institute of Washington, D.C.,*

*Inc. v. Connecticut General Life Insurance Co.,* 780 F.Supp. 24, 31 & n. 11 (D.D.C.1992), holds that misstatements as to whether coverage had been cancelled involved interpretation of the plan, not modification of the plan. It is unnecessary to adopt such reasoning in the present case.

6. In *Pohl,* 956 F.2d at 128, it is stated that the administrator in that case was not a fiduciary. In the present case, however, it is alleged that Principal Mutual exercised discretion in its administration of the plan and therefore Principal Mutual is a fiduciary. See January 15 Order at 7, *supra* at 1425.