27 F.Supp.2d 1225 (1998)
M. Kent WHITMAN, Plaintiff,
v.
HAWAIIAN TUG & BARGE CORP./YOUNG BROTHERS, LTD. SALARIED PENSION PLAN; Hawaiian Electric Company, Inc., a Hawaii corporation; as Administrator and named fiduciary of the Hawaiian Tug & Barge Corp./Young Brothers, Ltd. Salaried Pension Plan; Hawaiian Tug & Barge Corp., a Hawaii corporation, individually and as fiduciary of the Hawaiian Tug & Barge Corp./Young Brothers, Ltd. Salaried Pension Plan; William G. Chung; Does 1-30, Defendants.
Civ. No. 98-00886 DAE.
United States District Court, D. Hawai`i.
November 25, 1998.
*1226 *1227 Charles M. Heaukulani, Brooks Tom Miller & Porter, Honolulu, HI, for plaintiff.
J. Thomas Maloney, D'Amato & Maloney, Honolulu, HI, for defendants.
ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
EZRA, District Judge.
The court heard Plaintiff's Motion on November 23, 1998. Robert F. Miller, Esq., and Lori K. Kaizawa, Esq., appeared at the hearing on behalf of Plaintiff; David W. Lonborg, Esq., and J. Thomas Maloney, Jr., Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court DENIES Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

BACKGROUND

The Plans
Plaintiff M. Kent Whitman ("Plaintiff") was employed by Defendant Hawaiian Tug & Barge Corp. ("HTB"). As a consequence of Plaintiff's employment, he became vested in two ERISA-qualified pension plans maintained by HTB and affiliated employers: the Hawaiian Tug & Barge Corp./Young Brothers, Ltd. Salaried Pension Plan ("the Salaried Plan") and the Hawaiian Electric Industries Retirement Savings Plan ("the HEIRS Plan"). The Salaried Plan is a defined benefit plan, under which monthly retirement benefits are based on a participant's years of credited service, final average compensation, and, for early retirees, age at retirement. The HEIRS Plan is a defined contribution plan, under which Plaintiff could elect to receive his account balance either in the form of an annuity or as a lump sum upon retirement.
In 1994, Plaintiff received a Retirement Benefit Statement that estimated Plaintiff's monthly benefits to be $3,383 ($1,088 from the Salaried Plan and $2,295 from the HIERS Plan) if Plaintiff elected to retire at age 55.
In August of 1997, Plaintiff discussed with Defendant William G. Chung ("Chung"), HTB's Vice President for Personnel and Industrial Relations, Plaintiff's desire to retire early. Chung represented to Plaintiff that his gross annual retirement income would be approximately $48,000. In September of 1997, Plaintiff announced his intention to retire. Later that same day, Chung confirmed in writing that Plaintiff would receive $3,366.52 in monthly benefits if he retired on October 1, 1997 and $3,513.41 if he remained until December 31, 1997. Plaintiff alleges that these figures represented monthly benefits under the Salaried Plan only. Based on these figures, Plaintiff continued working at HTB through December.
Upon retiring, Plaintiff elected to have his HEIRS Plan account distributed in a single lump sum rather than an annuity. He received a distribution of approximately $565,000 in early 1998, which he rolled over into an Individual Retirement Account.

The Mistake
From January through June 1998, Plaintiff received monthly payments of $3,513.41. In May of 1998, HTB discovered that it had erred in calculating Plaintiff's benefits back in September of 1997. The monthly retirement benefit under the Salaried Plan is computed by multiplying 1.85% by the participant's years of credited service, and multiplying the result by the participant's final average compensation. If the participant retires early, his or her benefit is reduced, because it will be payable over a longer period. The reduction is .25% for each *1228 month by which the benefit commencement date precedes the Salaried Plan's normal retirement age of 65.
When Plaintiff retired, he was 56 years and eight months old and had 11.25 years of credited service under the Salaried Plan. His final average compensation was $10,003.72 per month. His benefit was reduced by 25% for early retirement (8 years and 4 months early, i.e., 100 months times .25%). Thus, Plaintiff was entitled to a monthly benefit of $1,561.52, not $3,513.41.
Due to HTB's clerical error, Plaintiff's final average compensation was miscalculated as $22,508.36 per month rather than the correct amount of $10,003.72. Defendants contend that the miscalculation resulted from a single keypunch error whereby Plaintiff's total compensation over his final 36 months was erroneously divided by 16 rather than 36.
Coincidentally, the miscalculated figure was almost identical to the monthly benefits Plaintiff would have received under both the Salaried Plan and the HEIRS Plan had Plaintiff elected to receive an annuity, rather than a lump sum, from the HEIRS Plan.
When HTB discovered its error, it contacted Plaintiff and informed him of the mistake. Plaintiff was told that his monthly benefits would be reduced to the correct amount beginning with the July 1998 payment. Plaintiff was also told that he would need to repay the overpayments he had received. In October of 1998, after providing Plaintiff with an opportunity to make other arrangements, HTB proceeded to offset Plaintiff's correct monthly benefit by the amount he received in overpayment. HTB intends to continue such offsets for twelve months until the entire amount of overpayment is recouped.

The Lawsuit
Plaintiff filed the instant action and Motion for Temporary Restraining Order on November 3, 1998, seeking injunctive relief to compel HTB to pay monthly benefits in the originally-calculated amount of $3,513.41. Plaintiff subsequently modified his request and now seeks only to preclude Defendants from reducing his $1,561.52 payments by any overpaid amounts. In support of his motion, Plaintiff alleges economic harm and extreme stress, anxiety, and depression due to the uncertainty of his financial future. Plaintiff states that had he known his monthly benefits under the Salaried Plan would only be $1,561.52, he would have planned his financial affairs differently (e.g., not decided to roll-over the HEIRS benefits into an IRA account) and/or not retired when he did.

STANDARD OF REVIEW
A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction. See 11A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 2951, at 253 (2d ed.1995). A temporary restraining order is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as it is necessary to hold a hearing and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).
The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. The propriety of preliminary injunctive relief requires consideration of two factors, the likelihood of the plaintiff's success on the merits and the relative balance of potential hardships to the plaintiff, defendant, and the public. State of Alaska v. Native Village of Venetie, 856 F.2d 1384, 1389 (9th Cir.1988). These two factors have been incorporated into a test under which the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Los Angeles Memorial Coliseum Comm. v. National Football League, 634 F.2d 1197, 1201 (9th Cir.1980). These formulations are not different tests, but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 516 (9th Cir.1993), cert. *1229 dismissed, 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994) (internal citations omitted).
With respect to the injury requirement, "the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury .... A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

DISCUSSION
Plaintiff has failed to present a sufficient showing of either likelihood of success on the merits or imminent, irreparable harm to warrant the issuance of either a temporary restraining order or a preliminary injunction.

I. Success on the Merits

Plaintiff's Complaint alleges nine claims for relief, including breach of fiduciary duty, violation of ERISA, promissory estoppel and various other state law claims. However, Plaintiff fails to recognize that "ERISA contains one of the broadest preemption clauses ever enacted by Congress." PM Group Life Ins. Co. v. Western Growers Assurance Trust, 953 F.2d 543, 545 (9th Cir. 1992) (quotation omitted). The ERISA provisions "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a). A state law "relate[s] to" an employee benefit plan "if it has a connection with or reference to such a plan." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (quotation omitted).
The ERISA preemptive provision is to be broadly construed and extends to common law tort and contract actions. Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Even claims brought under state law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the administration of such plans whether directly or indirectly. Ellenburg, 763 F.2d at 1095. Each of Plaintiff's state law claims have been specifically held to be preempted by either the Supreme Court or the Ninth Circuit.[1]See, e.g., Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124 (9th Cir.1992) (breach of contract, breach of covenant of good faith and fair dealing (bad faith), intentional infliction of emotional distress); DeVoll v. Burdick Painting, Inc., 35 F.3d 408 (9th Cir. 1994), cert. denied, 514 U.S. 1027, 115 S.Ct. 1381, 131 L.Ed.2d 234 (1995) (promissory estoppel); Lea v. Republic Airlines, Inc., 903 F.2d 624 (9th Cir.1990) (negligence, breach of contract, fraud); Farr v. U.S. West Communications, Inc., 151 F.3d 908 (9th Cir.1998) (punitive damages).
Thus, Plaintiff can succeed only if he can establish a claim under ERISA. To the extent that Plaintiff has not alleged deprivation of benefits to which he is entitled under the Salaried Plan, Plaintiff's claims can only be construed as either a claim for benefits under ERISA § 502(a)(1), with the alleged entitlement to benefits founded on an estoppel theory or as a claim under ERISA § 502(a)(3) for breach of fiduciary duty. Either way, Plaintiff has failed to demonstrate a likelihood of success on the merits.
First, several circuits, including the Ninth Circuit, have rejected estoppel claims that were practically identical to Plaintiff's. Watkins v. Westinghouse Hanford Co., 12 F.3d 1517 (9th Cir.1993); Law v. Ernst & Young, 956 F.2d 364 (1st Cir.1992); Slice v. Sons of Norway, 34 F.3d 630 (8th Cir.1994). In each case, the plaintiff received an incorrect benefit estimate prior to retirement, retired soon thereafter, and began receiving the incorrect benefit. The plan administration subsequently discovered the error and corrected the benefit. All three errors were *1230 substantial in magnitude, and all three plaintiffs claimed that they had relied on the erroneous figures. Nonetheless, all three courts rejected the plaintiffs' claims, because the relief they sought was contrary to the terms of the plan. Each of those courts held, as does this court, that estoppel cannot be applied in the ERISA context to permit recovery that is contrary to the unambiguous terms of a plan. As the Ninth Circuit stated, "Otherwise, every communication about prospective benefits could create a unique plan for a single participant who is not differently situated from fellow employees for whom the plan is established. Such a result would run counter to ERISA's overriding interest in avoiding side agreements that deviate from a plan applicable to all employees." Watkins, 12 F.3d at 1523.
The two cases cited by Plaintiff during oral argument, P.I.A. Michigan City, Inc. v. National Porges Radiator Corp., 789 F.Supp. 1421 (N.D.Ill.1992) and Fitch v. Arkansas Blue Cross and Blue Shield, 795 F.Supp. 904 (W.D.Ark.1992), do not compel the court to recognize an estoppel claim under ERISA. To the extent that these cases allow certain estoppel claims, they are not controlling. The Ninth Circuit has clearly held that ERISA preempts state law equitable estoppel claims. Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812 (9th Cir. 1992). While a party may assert a federal equitable estoppel claim, as discussed above, such claims are limited to situations where the wronged party can prove (a) the provisions of the plan at issue are ambiguous, and (b) oral representations interpreting the plan were made to the employee. Id. Because no ambiguities are alleged in the Salaried Plan, Plaintiff fails to establish a likelihood of success on this claim.
Second, Plaintiff cannot recover on a breach of fiduciary duty theory because, under ERISA, monetary relief for breach of fiduciary duty is available only to the plan itself, not to individual beneficiaries. Moreover, Defendants maintain that no breach of fiduciary duty occurred and that, in fact, the calculation error was discovered through the diligent performance of their fiduciary duties.
Based on the foregoing, the court finds that Plaintiff has not established a likelihood of success on the merits.

II. Irreparable Harm

Plaintiff has not alleged that he has been denied any benefit to which he is entitled under the Salaried Plan. Instead, Plaintiff seeks to prevent Defendants from recouping excess amounts that were paid to him. The exercise of equitable jurisdiction is predicated on the absence of an adequate remedy at law. Although Plaintiff has alleged that his financial situation and consequent health will suffer in the absence of immediate relief, he has not established either 1) that there is no adequate remedy at law or 2) that the balance of hardships tips so sharply in his favor as to warrant the issuance of a temporary restraining order.

CONCLUSION
For the reasons stated above, the court DENIES Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.
IT IS SO ORDERED.
NOTES
[1] Plaintiff argues that state common law malpractice claims are not precluded by ERISA. However, the cases which Plaintiff cites do not support this proposition. Moreover, malpractice is not distinguishable from other types of negligence.