**ABERNATHY & CLOSTHER, LTD.,** Trends-Action Marketing Corp. and Palapteryx Direct Marketing, Inc., Plaintiffs,

v.

**E & M ADVERTISING, INC., Mico Productions, Inc. and Michael Medico, Defendants.**

No. 82 Civ. 3631.

United States District Court, E.D. New York.

Dec. 27, 1982.

Moritt, Wolfeld & Resnick, Garden City, N.Y., for plaintiffs.

Monroe J. Korn, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The plaintiffs in this Lanham Act action have moved the Court seeking a preliminary injunction. In support of their motion, the plaintiffs have submitted affidavits alleging the following facts.

Plaintiffs Abernathy & Closther, Ltd., Trends-Action Marketing Corp. and Palapteryx Direct Marketing, Inc. (hereinafter "Plaintiffs"), are New York corporations having common ownership, management and control. The Plaintiffs are engaged in the business of selling, through direct response marketing, jewelry and jewelry related items on a national basis. The Plaintiffs advertise in both print media and television, and the customer responds by either mailing or telephoning in an order, and the product is then mailed directly to the customer by the Plaintiffs.

In or about August of 1982, Plaintiffs' marketing personnel conceived a marketing and merchandising idea whereby Plaintiffs would market through TV advertising an ensemble of three gold-plated rope chains, two of which were to be worn as necklaces and one as a bracelet. In addition, as part of its advertising, Plaintiffs decided to test-market the rope chain offer in conjunction with what is known in the mail order business as a "give-away" or "premium." A premium is an item in addition to the advertised product which is sent to the purchaser, free of charge, with the advertised product. If the purchaser should decide to return the advertised product pursuant to the advertiser's money back guaranty, the purchaser may nonetheless keep the premium and get a refund of the full purchase price. The specific premium or give-away item which Plaintiffs decided to offer with its rope chains was a quartz digital watch. To the best of Plaintiffs' knowledge, this was to be the first time that a quartz digital watch was to be offered as a premium as part of a national TV marketing program.

In order to implement this direct response marketing program, Plaintiffs sought the services of a scriptwriter with background and experience in writing scripts for television commercials. The defendant Michael Medico and his company, Mico Productions, Inc. were recommended to the Plaintiffs.

As a result of this recommendation, a meeting was arranged between Mr. Medico and the Plaintiffs. That meeting took place at the offices of Mico Productions, Inc. on or about August 19 or 20, 1982. Mr. Medico assured the Plaintiffs that he had a great deal of experience working for his own company and previously working for other advertising agencies as a television commercial scriptwriter.

In order that Mr. Medico might properly prepare the script, the Plaintiffs had to disclose to him, in detail, their marketing concept and pricing for the rope chain collection combined with the premium of the quartz watch. There was no written agreement. Approximately three days after that meeting, Medico presented Plaintiffs with a script for the TV commercial. Mico Productions, Inc. invoiced Plaintiffs and was promptly paid.

Plaintiffs' own copywriters made substantial revisions to the Medico script and immediately arranged for the production of the video taped TV commercial. The first test marketing of Plaintiffs' TV advertisement took place in or about the week of

September 20th. Based upon the preliminary results, Plaintiffs again went on the air on a limited basis in the latter part of October.

Test results indicated that Plaintiffs' marketing program of the rope chain ensemble, together with the quartz watch premium offer, were very well received by the consuming public and all indications from an analysis of the test data indicated that such a promotion on a national scale would be highly lucrative. Accordingly, the decision was made to run the television advertisement on a national basis and substantial sums of money well in excess of a million dollars have been committed by Plaintiffs to such a national advertising campaign.

On or about November 1, 1982, Plaintiffs received in the mail a recorded video cassette, apparently made by the same company that had made Plaintiffs' commercial. When Plaintiffs viewed this cassette, it discovered that Mico Productions, Inc. was apparently marketing the identical products with the same quartz watch premium offer and the same pricing structure as the Plaintiffs. Further, the defendants' commercial identified the offer as "an exclusive T.V. offer" and "made for the first time on T.V."

Upon discovering this conduct on the part of the Defendants, the Plaintiffs contacted Mr. Medico by telephone and insisted that he cease and desist from using the commercial. Mr. Medico subsequently advised Plaintiffs that he had checked with his "client's attorney" and had been assured that he could proceed with impunity. Subsequently, when Plaintiffs attempted to book television time on various stations across the country, Plaintiffs found themselves in many instances blocked because the stations had already accepted Defendants' competing advertisement.

On the basis of the foregoing facts, the Plaintiffs commenced this action against Defendants under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging "palming off" and "false advertising" violations. Plaintiffs also brought pendent state law claims for unfair competition and breach of confidential relationship. The Plaintiffs now seek a preliminary injunction enjoining Defendants from (1) selling jewelry products of a character and nature disclosed to Defendants by the Plaintiffs during the period of fiduciary relationship; (2) using in connection with the sale and promotion of any gold-plated necklace or bracelet, or with a companion wristwatch, any representations which falsely describe such products as originating with or being an exclusive offering of the Defendants, (3) using in connection with the sale and advertising of Defendants' jewelry products any statement or other act calculated or likely to cause the consuming public to have the impression that such products are the same as or equivalent to Plaintiffs' products; and (4) using in connection with the sale and advertising of Defendants' products any advertising by television commercials that are interspersed with the extensive television advertising of Plaintiff's products.

At the hearing on this motion, the Defendants conceded that the facts stated in the Plaintiffs' affidavits were accurate. Further, Mr. Medico himself testified that he had gotten the marketing idea from the Plaintiffs, and had decided to employ it for his own purposes. Both Defendants' and Plaintiffs' version of the television commercial were shown to the Court, and all parties conceded that the offers were virtually identical. The only significant difference was that the Defendants' commercial identified its products as the "Continental Rope Chain."

Although the Defendants conceded that the Plaintiffs' facts were accurate, they argued that a preliminary injunction should not issue here because these facts do not give rise to a Lanham Act violation. Because this Court agrees that no Lanham Act claim is likely to succeed here, the motion for a preliminary injunction is denied.

*Discussion*

In order to obtain the relief sought the Plaintiffs must demonstrate (a) irreparable harm, and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them

a fair ground for litigation and a balance of hardships tipping decidedly toward the [plaintiffs]. *Sperry International Trade, Inc. v. Govt. of Israel,* 670 F.2d 8, 11 (2d Cir.1982), *quoting, Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Since the pendent state law claims would have to be dismissed if the Lanham Act claim here were dismissed prior to trial, *U.M.W. v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it is a likelihood of success on the Lanham Act claim which must be established. The particular section of the Lanham Act upon which Plaintiffs rely is Section 43(a), 15 U.S.C. § 1125(a). That section provides, in pertinent part:

> "Any person who shall . . . use in connection with any goods or services . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action by any person who believes that he is or is likely to be damaged by any such false description or representation."

■ With respect to this section, there are two prongs or "legs" under which an action may be maintained. One such leg arises from the phrase "false designation of origin." Actions arising under this leg most commonly involve situations wherein a seller tries to "palm off" or "pass off" his product as that of another's. An action under this leg can only succeed if the features allegedly copied have acquired secondary meaning in the marketplace and are non-functional." *Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 303 (2d Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

■ The other leg under which a Lanham Act action may be maintained arises from the phrase "any false description or representation." An action under this section does not require any showing of secondary meaning or non-functionality, *id.* at 303 n. 3, and embraces false "innuendo, indirect intimations, and ambiguous sugges-

tions." *Vidal Sassoon, Inc. v. Bristol Myers Co.,* 661 F.2d 272, 277 (2d Cir.1981). For a false statement to be actionable under this leg, however, it must refer to the "inherent quality or characteristic of defendants' product." *Id.* at 278 (*quoting Fur Information & Fashion Council, Inc. v. E.F. Timme & Son, Inc.,* 501 F.2d 1048, 1051 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974)). *Accord, Coca-Cola v. Tropicana Products, Inc.,* 690 F.2d 312, 318 (2d Cir.1982).

■ Although the Plaintiffs' complaint asserts causes of action under both legs of the Lanham Act, the Plaintiffs have made no attempt to show that their product offer has acquired a "secondary meaning," and rely exclusively on the "false advertising" leg of the Lanham Act. Plaintiffs argue that since their advertisement ran on television prior to Defendants', and makes the identical offer (three rope chains and a quartz watch), the statements in Defendants' advertisement to the effect that its offer is an "exclusive T.V. offer" and made "for the first time on T.V." are false on their face and therefore actionable under § 43(a).

Although the equities in this case appear to weigh heavily in the Plaintiffs' favor, this Court concludes that their Lanham Act claim is not likely to succeed. While the Defendants' statements that its offer is an "exclusive T.V. offer" and made "for the first time on T.V." appear to be patently false, these claims do not relate to the "inherent quality or characteristic" of the Defendants' product. Defendants' claims do not suggest to the consumer any misinformation regarding the quality of the rope chains and watch being offered by the Defendants. Since the purpose of the Lanham Act was not to proscribe unfair competition but to "prevent false descriptions of goods being offered," *Fur Information & Fashion Council, Inc. v. E.F. Timme & Son, Inc.,* 501 F.2d at 1051–52, the Defendants' conduct here, while very possibly a breach of confidential relationship or act of unfair compe-

tition, does not rise to the level of a Lanham Act violation.[1]

*Conclusion*

Because the Defendants' claims do not deceive the public regarding the "inherent quality or characteristic" of the goods being offered, this Court finds that the Plaintiffs have not demonstrated the requisite "likelihood of success" on the merits or "serious questions going to the merits." Consequently, the Plaintiffs' motion for a preliminary injunction is denied.[2]

---

1. *American Home Products Corp. v. Abbott Laboratories,* 522 F.Supp. 1035 (S.D.N.Y.1981), relied upon by Plaintiffs, does not suggest a contrary result. In that case, the defendant advertised that it had developed a "new" hemorrhoid remedy product. The plaintiff brought suit under the Lanham Act, arguing that there was nothing "new" about the defendant's product. The court granted the plaintiff's motion for a preliminary injunction, finding that the phrase "new" in the context of the advertisement suggested that the product was "a major advance in hemorrhoid medication," and that this claim was false. *Id.* at 1040. Thus, unlike the case at bar, *Abbott Laboratories* involved a claim that did relate to the quality of the product being sold.

2. As a final matter, it should be noted that the defendants' cross-motion to dismiss the complaint was not considered at this time. The defendants' moving papers were submitted after the time for service specified in the Order to Show Cause, and were therefore rejected by the Court. Should the defendants wish to make this motion, it will have to be properly noticed in accordance with the court's motion rules.