**TRUCK COMPONENTS, INC., Plaintiff,**

**v.**

**K–H CORPORATION, doing business as the Kelsey–Hayes Group, and Kelsey–Hayes Company, Defendants.**

**No. 91 C 5011.**

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1991.

---

406

David M. Stryker, John Donofrio, Kirkland & Ellis, New York City, Donald G. Kempf, Jr., Jeffrey J. Willian, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Sara E. Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The parties to this action are involved in selling component parts to the trucking industry. The present dispute arises from the demarkation between the heavy-duty truck and light truck markets. The plaintiff, Truck Components, Inc. (TCI), sells brake parts and other wheel components for heavy-duty trucks and trailers through its wholly-owned subsidiary, Gunite Corporation. Until September of 1987, Gunite was a subsidiary of the defendants, Kelsey–Hayes Company and its holding company, K–H Corporation. In September, 1987, TCI purchased Gunite for fifty million dollars. The agreement to sell contained a covenant not to compete. It is the alleged breach of this agreement that is the basis for the four-count complaint filed with this Court. Count I contains a breach

of contract claim, Count II an unfair competition claim under § 43 of the Lanham Act, 15 U.S.C. § 1125, Count III raises unfair competition claims under Illinois state law, and Count IV charges the defendants with interference with business relationships. The defendants are before the court on a motion to dismiss. The defendants contend that Count II fails to state a claim, and, therefore, the entire complaint must be dismissed for lack of subject matter jurisdiction. For the following reasons, this Court agrees.

## BACKGROUND

For purposes of ruling on the pending motion, the Court accepts as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences that may be drawn from them. *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1241 (7th Cir.1990). A rule 12(b)(6) motion to dismiss may be granted only if the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The well-pleaded facts are as follows.

Defendant K–H, like its subsidiary, Kelsey–Hayes, is a Delaware corporation with its principal place of business in Romulus, Michigan. The capital stock of Kelsey–Hayes comprises the principal assets of K–H. Kelsey–Hayes is primarily involved in the manufacture and sale of brake and wheel components for automobiles and light duty trucks. Until September 4, 1987, Kelsey–Hayes had a presence in the heavy-duty truck market through its wholly-owned subsidiary, Gunite. At that time, K–H sold Gunite to TCI for fifty million dollars. To protect the value of its investment, TCI insisted that a non-compete agreement be signed by K–H. The agreement specified that K–H would not compete with TCI in the heavy-duty market for five years, with certain exceptions. For example, because K–H was not selling its Canadian operations to TCI, Kelsey–Hayes retained the right to continue manufacturing certain heavy-duty brake parts outside the United States.

Two years after selling Gunite to TCI, K–H was acquired by and merged into Varity Corporation through an exchange of stock. Varity is a Canadian corporation headquartered in Toronto. At the time of its acquisition of K–H, Varity was already competing with TCI in the heavy-duty truck parts business through its subsidiaries Dayton–Walther Corporation and Dayton Parts. Dayton–Walther is Gunite's principal competitor in the North American market for heavy-duty truck brake parts and other wheel-end components for sale to original equipment manufacturers (OEMs) and the secondary or after-market. After the merger Varity organized its core businesses into three groups, each named after one member of the group. As a result, K–H, Kelsey–Hayes and Dayton–Walther, among others were placed in the automotive parts group, which does business as the Kelsey–Hayes Group. While TCI does not suggest that the merger of K–H with Varity violated the non-compete agreement, it claims that from that point forward it was on the alert to protect the value of its investment in Gunite from encroachment by Kelsey–Hayes.

On June 12, 1991, the day before the opening of the International Truck Show in Anaheim, California, one of the largest trade shows for the heavy-duty industry, K–H circulated a package of promotional materials announcing that the "Kelsey–Hayes group had recommitted itself to the trucking industry for the long haul," by forming a Heavy Duty Truck and Trailer Brakes Business. This new business, according to one of the press releases, "combines medium- and heavy-duty wheel-end and brake operations of Romulus, Michigan-based Kelsey–Hayes and Dayton, Ohio-based Dayton Walther. This new business was formed in January of 1991 and is based in Dayton, Ohio, where Varity's existing heavy-duty operations are located. The division's new president announced to the trade press that projected sales for the new business were $88,000,000 for its first year in operation. This projected success was attributed, in part, to the commitment to invest more than 4% of sales in new plant and equipment, and more than 3% in research and development. In addition, ac-

cording to comments made to the heavy-duty trade press by the vice president of product engineering, "[t]he Heavy Duty Truck and Trailer Brake Business of the Kelsey–Hayes Group is the only wheel-end supplier in the industry with total 'concept to customer' capability, from design and engineering to testing to manufacturing to customer service."

These press releases, according to TCI, herald the return of Kelsey–Hayes to the heavy-duty components market, two years before the expiration of the non-compete agreement. This premature move allegedly violates the parties' agreement, undermining TCI's attempt to secure a competitive place in the heavy-duty market. The threat to TCI's competitive position in the heavy-duty market was allegedly garnered through a comprehensive media campaign representing that the Kelsey–Hayes Heavy Duty Truck and Trailer Brakes Business may lawfully compete against TCI. The four-count complaint filed with this Court seeks damages for breach of contract, for interference with business relationships, and for false advertising, under both federal and Illinois law.

## ANALYSIS

Section 43(a) of the Lanham Act reaches a wide array of unfair competitive practices. While fundamentally the act provides trademark protection, its scope was broadened by judicial interpretation to include unfair competition. In 1988, Congress amended § 43 to codify the judicial interpretation. See S.Rep. No. 100–515, *reprinted in* 1988 U.S.Code Cong. & Admin.News, 5577, 5603. The 1988 version of § 43(a) reads, in relevant part:

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's

goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125.

■ To state a claim for false advertising under § 43(a) the plaintiffs must allege that the defendants' advertisements were (1) false and misleading, (2) actually or likely to deceive a substantial segment of their audience, (3) material in their effects on purchasing decisions, (4) touting goods that entered interstate commerce, and (5) actually or likely to injure the plaintiff. *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 244 (9th Cir.1990), citing *Skil Corp. v. Rockwell Int'l Corp.,* 375 F.Supp. 777, 783 (N.D.Ill.1974).

■ In Count II of the complaint, TCI alleges that the defendants' press releases and other promotional efforts about the new Heavy Duty Truck and Trailer Brakes Business and its products "constitute representations that defendants are legally entitled and empowered to design, manufacture and market such products." Because such conduct is specifically prohibited by the covenant not to compete, the plaintiff contends, the representations are false and misleading in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). These alleged misrepresentations were likely to deceive purchasers of the relevant products to the detriment of TCI.

The defendants have brought a motion to dismiss the complaint, contending that the Lanham Act claim, the sole basis for federal jurisdiction, fails to state a claim upon which relief can be granted. Specifically, the defendants contend that the representations on which TCI relies are neither false nor misleading. While the defendants admit that the press releases do not always make a clear distinction between the Kelsey–Hayes Group, which includes Dayton Walther, and Kelsey–Hayes itself, they do not indicate that Kelsey–Hayes has entered the heavy-duty business. Instead the press releases indicate that Kelsey–Hayes has contributed certain operations to a business

unit. The Heavy Duty Truck and Trailer Brakes Business is a Dayton Walther operation, which is served by Dayton Walther personnel and plants. Thus, the defendants conclude that there is no Lanham Act claim, and the parties differences arise out of a contractual dispute, which should be litigated in state court.

The premise of the Lanham Act claim in the plaintiff's complaint is: if the defendants' representations are true, then they are back in the heavy-duty business months before they are legally entitled to be, and they have misrepresented that they are legally entitled to do so. In its response brief, however, plaintiff raises for the first time an alternative theory upon which to base its Lanham Act claim. Plaintiff has tendered to this Court a proposed amended complaint incorporating that claim. Paragraph 61 of the proposed amended complaint states, in relevant part:

> In the alternative, if defendants' press releases, public announcements and other promotional materials about Kelsey–Hayes' new Heavy Duty Division and its products ... are false, these publications constitute material misrepresentations that defendants are designing, manufacturing and marketing products which they are not in fact designing manufacturing and marketing. Such representations are false, confusing and materially misleading.

This claim seems to be in answer to the defendants' arguments that it is not Kelsey–Hayes, but Dayton Walther, that is in charge of the new business unit. The plaintiffs suggest that even if the new business is a Dayton Walther operation, the press releases do not make that clear. Instead the releases imply that the Heavy Duty Truck and Trailer Brakes Business is run by Kelsey–Hayes. This invocation of the Kelsey–Hayes name to sell heavy duty components is, therefore, false and misleading in violation of § 43(a).

The Court will consider first whether TCI's initial claim states an actionable misrepresentation under § 43(a). That claim suggests that, although everything said in the K–H promotional efforts was true, the silence on a material point violated the Lanham Act. Specifically, the defendants failed to tell the press and consumers that K–H and Kelsey–Hayes had no legal right to design, manufacture and market heavy-duty truck components.

█ Initially, the Lanham Act was interpreted narrowly. A typical Lanham Act action involved a new product or trademark that was confusingly similar to an already established one. The inevitable confusion was seen as a calculated attempt by the new-comer to divert customers by using the reputation of the established mark or product. The other typical claim involved the defendants attempts to "palm-off" its goods as those of the plaintiff and thus ride on the coattails of the plaintiff's goodwill. See, e.g., *Chromium Industries, Inc. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 554–55 (N.D.Ill.1978). Lanham Act claims are no longer limited to trademark or palming-off claims, however. Thus, "[i]t proscribes misrepresentations about the quality of defendant's own goods, 'even where the misrepresentations do not tend to confuse [his] goods with those of a competitor or otherwise misstate the origin of the goods.'" *In re Uranium Antitrust Litigation*, 473 F.Supp. 393, 408 (N.D.Ill.1979), quoting *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 397 F.Supp. 1063, 1072 (W.D.Pa.1975). Affirmative misrepresentations about one's own products are clearly actionable. See, e.g., *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C.Cir.1990) (Court finds that unsupported advertising claims regarding canine hip dysplasia and veterinarian preference violated Lanham Act); *MaGuire v. Sandy Mac, Inc.*, 138 F.R.D. 444 (D.N.J.1991) (Court certified class bringing, inter alia, Lanham Act claim that defendant affirmatively misrepresented that its ham met U.S.D.A. standards). In addition, under the 1988 amendments to the act, misrepresentations about another's products are actionable, as well. See S.Rep. No. 100–515, *reprinted in* 1988 U.S.Code Cong. & Admin.News, 5577, 5603.

The plaintiff points to *In re Uranium Antitrust Litigation*, 473 F.Supp. 393, in support of its proposition that the failure to

state that Kelsey–Hayes' reentry into the heavy duty components industry violated its legal obligations. That court stated that "the Act should be read, at minimum, to protect competitors from misrepresentations which a defendant makes about its own products and which relate to the principle bases of competition among sellers." *Id.* at 409 (footnote omitted). Because uranium cannot be varied by definition, the sellers cannot misrepresent its inherent ingredients or qualities. The sellers of uranium compete on the basis of capacity to produce, price and other variables. If the uranium market is not to be insulated from Lanham Act liability, the court reasoned, those basic elements of competition must be considered bases for liability under the act.

The heavy duty truck industry is not limited in its competitive reach. Sellers of heavy duty truck products can compete on the basis of the inherent quality of their goods. In any event, the *Uranium* case involved affirmative misrepresentations. The plaintiff's Lanham Act claim seeks relief, by contrast, based on an alleged omission of a relevant, material fact. The Senate Report to the 1988 amendments addressed that issue:

> The second [amendment to the revised language of § 43(a)] deleted proposed language stating that omissions of material information which misrepresents the nature, characteristics or qualities of a product are actionable under the section. This deletion was made to respond to concerns that it could be misread to require that all facts material to a consumer's decision to purchase a product or service be contained in each advertisement. Currently, the question of when Section 43(a) reaches failure to disclose information material to a consumer's purchasing decision is an open question in the courts. The committee does not through the deletion indicate that it condones deceptive advertising, whether by affirmative misrepresentation or material omission, and leaves to the courts the

task of further developing an[d] [sic] applying this principle under section 43(a). *Id.* at 5603–5604.

Most of the cases cited by the parties involving alleged omissions of material facts focused on allegations that the omissions would wrongfully confuse the consuming public into thinking that the defendant had the plaintiff's official imprimatur. These cases center on the issue of television rights. See, *e.g.*, *WCVB–TV v. Boston Athletic Ass'n*, 926 F.2d 42 (1st Cir. 1991) (Court finds that broadcasting Boston marathon, without permission of Boston Athletic Ass'n is not Lanham Act violation, and does not create inference that broadcast is somehow official); *Entertainment & Sports Programming Network, Inc. v. Edinburg Community Hotel*, 735 F.Supp. 1334 (S.D.Tex.1986) (Court finds that the defendant violated § 43(a) "by falsely inferring and describing that the entertainment programming services of the plaintiffs HBO and ESPN were paid for and lawfully obtained, that the defendant was authorized to receive and provide Plaintiff's services to their own customers, and that the Defendant was authorized by HBO and ESPN to receive tangible and economic benefits from its hotel guests."). These cases involve the right to present someone else's product to the consuming public.

■ The Court finds a fundamental difference between those cases and the present case. Liability under the Lanham Act must be predicated on a misrepresentation as to the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods." No such misrepresentation is at issue here. The complaint does not suggest that the representations in the press releases concerning the production of the heavy truck components are false. Moreover, the plaintiff has not suggested that the quality of the goods has been misrepresented in any way. To the extent that the *ESPN* case suggested that an omission regarding the legal rights of the defendant could be a basis for liability under § 43(a), this Court cannot agree. The Lanham Act is limited to misrepresen-

tations about a product or service.[1] This case is essentially a breach of contract case. This Court is unwilling to expand the bounds of the Lanham Act, and thus federal jurisdiction, to every breach of a covenant not to compete. Accordingly, the Court finds that Count II of the complaint fails to state a claim for relief under § 43(a) of the Lanham Act.

The plaintiffs have proffered an alternative Lanham Act claim in a proposed amended complaint. That claim, brought in response to the defendants' argument that the Kelsey–Hayes Company is not involved with the new heavy duty operations, states that even if the new operations are run by Dayton Walther, the press releases imply the involvement of Kelsey–Hayes and thus mislead consumers in violation of the Lanham Act.

The Court finds that this proposed amended Count II would not withstand a motion to dismiss. The press releases clearly state that the new Heavy Duty Truck and Trailer Brakes Business is part of the Kelsey–Hayes Group, as opposed to the Kelsey–Hayes Company. Thus, there is no basis for the plaintiff's allegation that the releases imply that the Kelsey–Hayes Company has gotten back into the heavy-duty component business. In each press release, it is clearly stated that Kelsey–Hayes has contributed part of its operations, specifically its medium-duty wheel-end and brake operations, to the new business. The new business combines those elements of the Kelsey–Hayes Company with Dayton Walther's heavy duty operations. This does not imply a change in the products manufactured by either Kelsey–Hayes or Dayton Walther; as announced in the press releases, the combined operations primarily constitute a new marketing arrangement. Nowhere does the plaintiff allege that it has the right to control the use of the Kelsey–Hayes name.

Accordingly, the Court grants the defendants' motion to dismiss. In addition the Court denies the motion to file the proposed amended complaint, without prejudice, with leave to file an amended complaint within twenty-one days. The Court requests that, should the plaintiff choose to file an amended complaint, the plaintiff articulate more particularly which provision of the covenant not to compete forms the basis of the Lanham Act claim.

---

1. This Court considers the decision in *Chromium Industries v. Mirror Polishing & Plating,* 448 F.Supp. 544 (N.D.Ill.1978) as being consistent with this view. Misleading statements regarding whether a process is patented or not go to an essential characteristic of that product.