## B. SANFIELD, INC., Plaintiff,

v.

## FINLAY FINE JEWELRY CORPORATION, Defendant.

No. 93 C 20149.

United States District Court, N.D. Illinois, Western Division.

July 12, 1994.

---

Gregory M. Scheurich, Brian D. Shore, Mark C. Johnson, Guyer & Enichen, Rockford, IL, for plaintiff.

Tyrone C. Fahner, Rita N. Conroy, Diane Green Smith, Mayer, Brown & Platt, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiff B. Sanfield, Inc. ("B. Sanfield") filed a three-count amended complaint against defendant Finlay Fine Jewelry Corporation ("Finlay"), alleging violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), 815 ILCS 505/1 *et seq.* Previously, this court dismissed the original complaint for failure to plead allegations of fraud with the particularity required by Fed. R.Civ.P. 9(b), granting B. Sanfield leave to file an amended complaint, which it did.[1] Finlay now moves to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and moves for sanctions, based on the original and amended complaints, pursuant to Fed.R.Civ.P. 11.

### BACKGROUND

The facts below are derived from the amended complaint, the well-pled allegations of which the court must take as true for the purpose of deciding the present motions, drawing all reasonable inferences in B. Sanfield's favor. B. Sanfield is a jewelry retailer located in Rockford, Illinois. Finlay operates the jewelry departments of two Bergner's department stores located in Rockford. B. Sanfield and Finlay are, therefore, competitors in the Rockford retail jewelry market.

According to the allegations of the complaint, during the three years prior to the filing of the complaint, Finlay regularly and frequently represented in promotional mailings, newspaper advertisements, and signs in its stores, that certain items of jewelry, including gold chains, bracelets, and earrings,

---

1. The original complaint contained allegations of violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, which do not appear in the amended complaint.

were on sale for 50% of their regular prices.[2] These items, however, had never been offered at the stated "regular" price for any substantial period of time, and Finlay never in good faith intended to sell the items at the "regular" price.

## CONTENTIONS

Finlay contends the amended complaint fails to plead the allegations of fraud with the particularity required by Fed.R.Civ.P. 9(b). Finlay also contends section 43 of the Lanham Act does not cover advertisements of price information. In regard to the state law claim, Finlay contends the CFDBPA does not extend standing to competitors, but only applies to consumers and government representatives.

B. Sanfield contends that it has, in fact, satisfied Rule 9(b), by pleading the who, what, when, and where of the alleged fraud. B. Sanfield also contends section 43(a) covers deceptive advertising in regard to pricing, especially in that with regard to gold items, price is an inherent quality of the product. Finally, B. Sanfield contends the CFDBPA does, in fact, confer standing upon business competitors and that if standing is restricted with regard to competitors, it still includes those whose allegations implicate consumer protection concerns, as do the allegations of the amended complaint.

## DISCUSSION

In determining whether to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all well-pled factual allegations and draw all reasonable inferences in favor of a plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal is appropriate if it appears beyond a doubt that a plaintiff can prove no set of facts consistent with the complaint that would entitle him to the relief he seeks. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *McMath v.*

*City of Gary,* 976 F.2d 1026, 1031 (7th Cir. 1992).

## I. Rule 9(b)

Under Rule 9(b), allegations of fraud must be pled with particularity. B. Sanfield's failure to provide even the most basic outline of such allegations in its original complaint led to this court's order dismissing that complaint. While the amended complaint is not a model of specificity, it does improve on the original complaint with just enough detail to survive the present motion. A major purpose of Rule 9(b) is the need to provide fair notice to a defendant of the nature of the allegations and thus permit a defendant to respond adequately. *See Norris v. Wirtz,* 703 F.Supp. 1322, 1328 (N.D.Ill. 1989); *Elliott Graphics, Inc. v. Stein,* 660 F.Supp. 378, 380 (N.D.Ill.1987); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1296 (1994). Another, perhaps more important, purpose is to discourage a plaintiff from "tossing" into a complaint unsubstantiated accusations of fraud which may harm the goodwill of a business firm. *Bankers Trust v. Old Republic Ins.,* 959 F.2d 677, 683 (7th Cir.1992). Toward these ends, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated," *Bankers Trust,* 959 F.2d at 683 (quoting *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990)), or, in other words, "the plaintiff must plead the 'who, what, when, and where' of the alleged fraud," *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir.1992).

The amended complaint provides each of these pieces of information, in its allegations that through newspaper advertisements, promotional mailings, and signs in its stores, Finlay represented that jewelry was significantly reduced in price, whereas the jewelry had never really been offered or

---

**2.** B. Sanfield has attached to the complaint a Bergner's newspaper advertisement as an example (which the court takes not as evidence but as part of the allegations). Very large print near the top of the advertisement states, "50% OFF FINE JEWELRY." The advertisement includes pictures of various items of jewelry. Near each piece is print describing the item and giving its price. For example, next to various sets of earrings, the advertisement states, "99.99 Hoops, reg. $200," "$249 Hoops with balls, reg. $500," and "19.99 6mm pearl earrings, reg. $40."

intended to be sold at the price from which it was supposedly discounted. Through the attached sample newspaper advertisement, B. Sanfield provides further detail. As a consequence, it cannot be said that Finlay would be without fair notice of the allegations of fraud or would be unable adequately to respond. The amended complaint makes clear precisely the behavior which is alleged to violate section 43(a) and the CFDBPA.

■ As to the rule's purpose of discouraging ill-founded and harmful allegations, that purpose will be best served by examining whether B. Sanfield is able to come forward with appropriate evidence in support of the more particular allegations Rule 9(b) has forced it to make in the amended complaint. If B. Sanfield chooses to proceed with the case, the real test will be its ability to demonstrate an evidentiary basis for its allegations.[3] Thus, Rule 9(b) will have served its purpose by requiring B. Sanfield to make allegations specific enough to subject it to sanctions under Rule 11 if the allegations appear, upon later inspection when the underlying evidence is before the court, not to have been based upon reasonable inquiry. *See* Fed.R.Civ.P. 11(b)(3) (there must be a reasonable basis to believe "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.").[4]

## II. Section 43(a)

■ Section 43(a) of the Lanham Act, provides, in pertinent part, that

(a)(1) Any person who ... in connection with any goods ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (1994). The private remedy thus created applies with equal force to two different types of false advertising. *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.1992). First, it covers statements which are literally false. *Id.* Second, it covers statements which are literally true or ambiguous but which convey a false impression or are misleading in context. *Id.* The elements of such a false advertising claim are that a defendant's advertisements were (1) false and misleading in one of the two manners above; (2) actually deceiving or likely to deceive a substantial segment of their audience; (3) material in their effects on purchasing decisions; (4) touting goods that entered

3. In response to the present motions, B. Sanfield attempts to rely, *inter alia,* upon litigation in other jurisdictions and a previous case in this district which may not be relevant or otherwise appropriate as evidence in the present case when the time comes. *See* Plaintiff's Memorandum Opposing Defendant's Motion to Dismiss the Amended Complaint at 4–6. B. Sanfield is reminded that only evidence admissible as to content is acceptable in opposition to a motion for summary judgment. Fed.R.Civ.P. 56(e); *see Lovejoy Electronics, Inc. v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir.1989). Evidentiary materials the content of which would not be admissible at trial (such as that to which B. Sanfield refers by stating, "To specifically state such knowledge or insights, in this brief or in the pleadings in this case, would arguably be in violation of agreements and confidentiality orders previously imposed by this court.") have not been considered by this court in regard to the present motions (to

dismiss and for sanctions), will not be considered in regard to future motions, and should not be relied upon by B. Sanfield in evaluating whether to proceed with this case.

4. For this reason, Finlay's motion for sanctions under Rule 11 is, at this time, denied as far as it refers to reasonable inquiry into fact. The proper moment for determining the adequacy of B. Sanfield's factual basis for filing the amended complaint will be the summary judgment stage, at which point Finlay may renew its motion if it, in turn, has a reasonable basis for doing so.

Finlay's motion for sanctions under Rule 11 as to B. Sanfield's reasonable inquiry into the law is also denied, as B. Sanfield's positions in regard to both major legal issues raised by Finlay are fully supported by statutory language and case law, as discussed *infra.*

into interstate commerce; and (5) actually, or likely to be, injurious to the plaintiff. *See Appraisers Coalition v. Appraisal Inst.,* 845 F.Supp. 592, 606–07 (N.D.Ill.1994) ((citing *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.,* 911 F.2d 242, 244 (9th Cir.1990) (in turn citing *Skil Corp. v. Rockwell Int'l Corp.,* 375 F.Supp. 777, 783 (N.D.Ill.1974))); *Truck Components, Inc. v. K–H Corp.,* 776 F.Supp. 405, 408 (N.D.Ill. 1991) (same).

■ Finlay argues that such a false advertising cause-of-action does not apply to claims involving pricing. Finlay makes two separate arguments in this regard. For its first argument, Finlay relies upon *American Consumers, Inc. v. Kroger,* 416 F.Supp. 1210 (E.D.Tenn.1976). In *American Consumers,* the plaintiff brought a false price advertising claim, directly raising the issue of whether such a claim came within the scope of section 43(a). The court in that case acknowledged the evolution of the section 43(a) cause-of-action beyond the narrow limits of trademark infringement and its close analog, "palming off" (posing one's products as those of a competitor). The court observed that "recent cases [had] generally recognized that section 43(a) did not simply re-enact the common law tort of 'palming off,' but rather created a new federal statutory tort rendering actionable any false description or misrepresentation by a defendant of his merchandise." *Id.* at 1212. Turning to the issue of whether section 43(a) covered false advertising in regard to the price of goods, the court observed that false representations regarding price could hardly be considered less unfair or damaging to a competitor than other false representations. *Id.* After fully setting forth the reasons false price advertising should come within the scope of section 43(a), however, the *American Consumers* court explained that it was constrained to follow Sixth Circuit precedent from an earlier decade limiting section 43(a) to "misrepresentations which are of the same general character" as trademark infringement, essentially, in other words, to "palming off." *Id.* at 1212–13 (following *Federal–Mogul–Bower Bearings, Inc. v. Azoff,* 313 F.2d 405 (6th Cir.1963)).

*American Consumers* is thus hardly resounding precedent for excluding false price advertising from section 43(a). Indeed, as has been recognized recently, "Lanham Act claims are no longer limited to trademark or palming-off claims." *Truck Components,* 776 F.Supp. at 409. In fact, any requirement that "palming off" be a necessary component of a section 43(a) false advertising claim "is clearly not the law in this circuit." *Computer Care v. Service Sys. Enter., Inc.,* 982 F.2d 1063, 1075 (7th Cir.1992) (citing *Abbott Lab.,* 971 F.2d at 11). Instead, section 43(a) "proscribes misrepresentations about the quality of [a] defendant's own goods, even where the misrepresentations do not tend to confuse [a defendant's] goods with those of a competitor or otherwise misstate the origin of the goods." *Truck Components,* 776 F.Supp. at 409 (quoting *In re Uranium Antitrust Litigation,* 473 F.Supp. 393, 408 (N.D.Ill.1979) (internal quotation omitted)). Thus, in contrast to the state of the law when *Federal–Mogul–Bower,* the case which the *American Consumers* court was constrained to follow, was decided, now "[a]ffirmative misrepresentations about one's own products are clearly actionable," *see id.* (citing *ALPO Petfoods, Inc. v. Ralston Purina,* 913 F.2d 958 (D.C.Cir.1990)), and *American Consumers* is no longer viable authority.[5]

For its second argument, Finlay relies upon the language of several courts referring to section 43(a) as covering advertising involving "inherent qualities" of goods. *See, e.g., Vidal–Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272 (2d Cir.1981); *Fur Info. & Fashion Council, Inc. v. E.F. Timme & Son, Inc.,* 501 F.2d 1048, 1051–52 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *American Consumers,* 416 F.Supp. at 1212. Based upon this phrase, Finlay argues that advertising in regard to price does not involve such an "inher-

---

**5.** Indeed, *Federal–Mogul–Bower* itself has been limited to trade dress claims and its holding in regard to section 43(a) false representation claims explained as dicta. *See Coca–Cola Co. v. Procter & Gamble Co.,* 822 F.2d 28, 30–31 (6th Cir.1987). The law in the Sixth Circuit, where

*American Consumers* was decided, is now that "section 43(a) encompasses claims of false advertising and misrepresentation of quality and is not limited to claims of passing off a product." *Id.* at 31.

ent quality," and must, therefore, be excluded from the scope of the Lanham Act. There are several flaws in such an argument. First, as amended in 1988, the statute itself does not refer to *inherent* qualities of goods, but simply to the "nature, characteristics, qualities, or geographic origin" of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B), *as amended by* Pub.L. 100–667, Title 1, § 132, 102 Stat. 3946 (1994). This is considerably broader language which does not, on its face, appear to exclude price. The "nature" of a good might be limited to its "inherent qualities." Whether or not price goes to the "nature" of a product, however, it would certainly constitute one of a good's "characteristics [and] qualities." Further, the pricing of goods may very well constitute the nature of or a characteristic or quality of a business entity's "commercial activities." [6]

Second, with the exception of *American Consumers*, in which the court recognized

the logic of including false price advertising within section 43(a) but felt bound to follow now-outdated precedent, as discussed *supra,* none of the cases referring to "inherent qualities" has actually excluded a false price advertising claim.[7] In fact, even one case acknowledging the possibility that section 43(a)'s scope has been limited to "inherent qualities" of goods held that deceptive price advertising must qualify in some circumstances as a basis for section 43(a) liability. *See In re Uranium Antitrust Litigation,* 473 F.Supp. 382, 408–09 (N.D.Ill.1979) (acknowledging possible applicability of "inherent quality" requirement and holding that where price is a principal basis of competition among sellers of a product, it comes within section 43(a)).[8]

Third, price has been implicitly recognized as a characteristic or quality of goods forming the basis of a section 43(a) claim, *see Cook, Perkiss,* 911 F.2d at 244–45 (claim

---

**6.** To exclude false price advertising would not only conflict with the plain language of section 43(a) but also with its purpose, a fact recognized by even the *American Consumers* court. *See* 416 F.Supp. at 1212 (concluding, "Thus it would appear that since it was the intent of Congress in enacting the Lanham Act to 'protect persons engaged in [interstate commerce]' against unfair competition,' falsity in price advertising is equally as unfair and damaging as falsity in the designation of the inherent qualities or ingredients of" a product). Section "43(a) is designed to protect the right of the consumer to be told the truth." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04[1][b], at 27–37 & 27–38 (3d ed. 1993) (hereinafter "McCarthy"). In other words, "Quite clearly, the Congressional intention was to allow a private suit by a competitor to stop the kind of unfair competition that consists of lying about goods or services, when it occurs in interstate commerce." *Id.* (quoting *Skil Corp.,* 375 F.Supp. at 784–85).

**7.** The "inherent quality" language has been embraced most strongly by the Second Circuit, which adopted it as a formal requirement under section 43(a). *See* McCarthy, § 27.07[2][g], at 27–78 (citing *Vidal–Sassoon,* 661 F.2d at 277–78; *Coca–Cola v. Tropicana Prod., Inc.,* 690 F.2d 312 (2d Cir.1982)). As one commentator has put it, this requirement "is apparently a reformulation of the need for misrepresentation to be 'material' in that it affects the customer's purchasing decision," *id.; see also* Ivan L. Preston, *The Definition of Deceptiveness in Advertising and Other Commercial Speech,* 39 Cath.U.L.Rev. 1035, 1046 n. 53 (1990) (stating "claim must be one that 'is

likely to influence the purchasing decision' " (quoting *Skil Corp.,* 375 F.Supp. at 783) and referring to a Second Circuit "inherent quality" case, *Vidal Sassoon,* 661 F.2d at 277–78), which materiality requirement misrepresentation in regard to price would obviously satisfy. Further, not only did the Second Circuit cases in which the inherent quality requirement was adopted pre-date the 1988 amendment to section 43(a) which added the wording "nature, characteristics, qualities, or geographic origin" of "goods, services, or commercial activities," 15 U.S.C. § 1125(a)(1)(B), *as amended by* Pub.L. 100–667, Title 1, § 132, 102 Stat. 3946 (1994), but the requirement has not been adopted by the Seventh Circuit. *Cf. Keller Medical Serv. v. Armstrong Medical Indus., Inc.,* 842 F.Supp. 1086, 1091–92 (N.D.Ill.1994) (rejecting, as more narrow than appropriate, interpretation of Lanham Act based upon inherent quality requirement found in *Abernathy & Closther, Ltd. v. E & M Advertising, Inc.,* 553 F.Supp. 834 (E.D.N.Y. 1982)); *but cf. Truck Components,* 776 F.Supp. at 409–10 (discussing, in dicta, application of inherent quality requirement as explicated in *Uranium* ); *In re Uranium Antitrust Litigation,* 473 F.Supp. 382, 408–09 (N.D.Ill.1979) (acknowledging possible applicability of "inherent quality" requirement and holding that where price is a principal basis of competition among sellers of a product, it comes within section 43(a)).

**8.** B. Sanfield does, in fact, argue that gold jewelry in the Rockford area retail market is precisely such a good for which price may be a determinative selling quality.

involving advertiser's statement that it was lowest cost provider of service dismissed as puffery); *Norton Tire Co. v. Tire Kingdom Co.*, 858 F.2d 1533, 1535 (11th Cir.1988) (claim involving advertisement of particular service at particular price dismissed because not actually false); *Uranium*, 473 F.Supp. at 408–09; *American Bankcard Ctr., Inc. v. Peach Tree Bancard Corp.*, No. 90 C 2456, 1993 WL 286479 1993 U.S.Dist. LEXIS 10345 (N.D.Ill. July 28, 1993) (deceptive price advertising constituting valid section 43(a) claim); *Montgomery Ward & Co. v. Fretter, Inc.*, No. 91 C 8011, 1992 WL 212513 1992 U.S.Dist. LEXIS 13065 (N.D.Ill. Aug. 27, 1992) (claim involving accuracy of advertisement attacking competitor's price advertising valid under section 43(a)), and one recent court has explicitly held that false price advertising comes within the scope of section 43(a), *see Workplace Corp. v. Office Depot, Inc.*, No. 89–1485–CIV–T–13A, 1990 WL 106727 1990 U.S.Dist. LEXIS 9280 (M.D.Fla. June 5, 1990) (citing *Norton Tire*, 858 F.2d 1533). As a consequence, B. Sanfield's deceptive price advertising claim is not beyond the scope of section 43(a) of the Lanham Act, and Count I of the amended complaint should not be dismissed for that reason.

## III. Illinois Consumer Fraud and Deceptive Business Practices Act

 Finlay contends the CFDBPA does not confer standing to competitors but only to consumers and government authorities. As the original source of this rule Finlay cites *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977). Finlay also states that "[t]he Illinois Supreme Court has reaffirmed this requirement in two more decisions," namely *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill.2d 1, 165 Ill.Dec. 655, 585 N.E.2d 51 (1991), and *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165 (1992).

In *Steinberg*, the Illinois Supreme Court held that because the CFDBPA confers standing only to consumers, borrowers, and businessmen in regard to goods and services, a medical student suing a medical school does not have standing, not qualifying as a consumer and medical school not qualifying as a good or service. 13 Ill.Dec. at 703, 371 N.E.2d at 638. In *Datacom*, the Illinois Supreme Court held that *Steinberg* does not prevent a state's attorney from invoking the CFDBPA, stating, "A person's status as a consumer relates to his or her standing as an individual under [the CFDBPA] but is irrelevant in a case, like the one at bar, which is brought by the state's attorney." 165 Ill. Dec. at 669, 585 N.E.2d at 65. "[T]his court in *Steinberg* simply held that applicants to a medical school are not consumers for purposes of the [CFDBPA]." *Id.* In *E & E Hauling*, the Illinois Supreme Court held that while the definition of person found in the CFDBPA controls standing to sue as an individual,[9] it is irrelevant to the Illinois Attorney General's standing, which is derived from another section of the CFDBPA. 180 Ill.Dec. at 278, 607 N.E.2d at 172.

While none of these cases thus addresses or even contains dicta implicating the issue of whether a competitor business has standing to bring suit under the CFDBPA, Finlay does cite cases which do. In *Allcare, Inc. v. Bork*, 176 Ill.App.3d 993, 126 Ill.Dec. 406, 412–13, 531 N.E.2d 1033, 1039–40 (1st Dist. 1988), the First Appellate District stated that "recent case law construing [the CFDBPA] convinces us that, as a procedural matter, the statute was intended to provide redress only to consumers generally, not to businesses injured by other businesses where they are not consumers of each other's goods or services." In addition, in *Century Universal Enter., Inc. v. Triana Dev. Corp.*, 158 Ill. App.3d 182, 110 Ill.Dec. 229, 239, 510 N.E.2d 1260, 1270 (2d Dist.1987), the Second Appellate District held that "the disputes ... between businessmen [who have contracted together but] who are not consumers of each other's goods or services, did not fall within the ambit of the CFDBPA."

The meaning of these cases in relation to the rule for which Finlay cites them has

9. As defined in the CFDBPA,
 The term "person" includes any natural person or his legal representative, partnership, corporation (domestic or foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof.
 815 ILCS 505/1(c) (1994).

more recently been explained by the Second Appellate District. In *Downers Grove Volkswagen v. Wigglesworth,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 415–17, 546 N.E.2d 33, 39–41 (2d Dist.1989), the court evaluated an argument, based on *Allcare* and *Century Universal,* that the CFDBPA applies only to consumers. The *Wigglesworth* court opened its discussion of the issue by quoting Northern District of Illinois precedent to the effect that "businesses have standing to sue under [the CFDBPA] to redress competitive injury they suffer when other businesses deceive customers." 137 Ill.Dec. at 415, 546 N.E.2d at 39 (quoting *Pain Prevention Lab. v. Electronic Waveform Labs, Inc.,* 657 F.Supp. 1486, 1493 (N.D.Ill.1987) (in turn quoting *Newman–Green, Inc. v. Alfonzo–Larrain,* 590 F.Supp. 1083, 1087 & n. 6 (N.D.Ill. 1984))). It then addressed *Allcare* and *Century Universal.* The *Allcare* language was dicta, included after the court had already barred the cause of action for other reasons. *Id.* 137 Ill.Dec. at 416, 546 N.E.2d at 40. The *Century Universal* language appearing to preclude non-consumer suit under the CFDBPA, on the other hand, had simply been taken out of context. *Id.* The issue in *Century Universal* had been whether the two businessmen who had contracted together but were not consumers of each other's goods or services possessed standing under the CFDBPA. *Id.* (citing *Century Universal,* 110 Ill.Dec. at 229, 510 N.E.2d at 1260). Because the legislature in creating a private cause-of-action under the CFDBPA did not intend to substitute the new cause-of-action for the existing common law fraud and contracts causes-of-action, businessmen who were not consumers of each other's goods or services and who were suing over a contract could not invoke the CFDBPA. *Id.* (citing *Century Universal,* 110 Ill.Dec. at 229, 510 N.E.2d at 1260). Thus, the *Wigglesworth* court concluded in regard to *Century Uni-*

*versal,* that case "should not be read ... to hold that all disputes between businesses which are not consumers of each others goods or services are not covered under [the CFDBPA]." *Id.*

Instead, "a fair reading of the [CFDBPA as it had been amended to include businessmen] is that the General Assembly simply intended to grant businessmen standing to sue to redress competitive injury they suffer when other businessmen deceive customers." *Wigglesworth,* 137 Ill.Dec. at 416, 546 N.E.2d at 40 (quoting *Newman–Green, Inc.,* 590 F.Supp. at 1087). As another court has put it, "while some authorities may be construed as holding otherwise ... the only possible conclusion is that aggrieved businessmen do have standing to bring suit under [the CFDBPA]." *Sullivan's Wholesale Drug v. Faryl's Pharmacy, Inc.,* 214 Ill.App.3d 1073, 158 Ill.Dec. at 191, 573 N.E.2d 1370, 1376 (5th Dist.1991).

■ Thus, in contrast to Finlay's statement that "[t]he Illinois Supreme Court has never waivered from the *Steinberg* requirement that a party must be a 'consumer' to have standing under the [CFDBPA]," Memorandum of Law in Support of Motion to Dismiss at 9,[10] in truth, "[w]ith the exception of the statement in *Allcare, Inc.,* which was dicta, no cases have held that the [CFDBPA] protects only consumers," *Wigglesworth,* 137 Ill.Dec. at 416, 546 N.E.2d at 40,[11] and a number of cases have held that the CFDBPA also protects businesses, *see Gadson v. Newman,* 807 F.Supp. 1412, 1421 (C.D.Ill.1992) (citing *Wigglesworth* for standing for non-consumer business suit); *P.I.A. Michigan City, Inc. v. National Porges Radiator Corp.,* 789 F.Supp. 1421, 1427–28 (N.D.Ill.1992) (holding "the Illinois Supreme Court would hold that standing under the [CFDBPA] is not limited to consumers" but extends also to businesses); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869,

10. One court has even read *Datacom Systems Corp.,* 165 Ill.Dec. at 667–72, 585 N.E.2d at 63–68, to contain "discussion indicating that the Illinois Supreme Court intends to read the Consumer Fraud Act broadly and not limit standing to consumers." *P.I.A. Michigan City, Inc. v. National Porges Radiator Corp.,* 789 F.Supp. 1421, 1427–28 (N.D.Ill.1992).

11. With the exception also of the statement in *Brown v. Veile,* 193 Ill.App.3d 513, 144 Ill.Dec. 708, 712, 555 N.E.2d 1227, 1231 (5th Dist.1990) (decided after *Wigglesworth* made the statement quoted in the text), which was founded upon a misreading of *Steinberg* and which no longer appears to be good law even in its own appellate district, *see Sullivan's Wholesale Drug,* 158 Ill. Dec. at 191, 573 N.E.2d at 1376.

877–78 (N.D.Ill.1990) (the CFDBPA "clearly extends to businesses," and a plaintiff "need not be a consumer to bring an action under" the CFDBPA); *Jays Foods, Inc. v. Frito Lay, Inc.*, 664 F.Supp. 364, 368 (N.D.Ill.1987) (business competitor may invoke CFDBPA if claim implicates consumer injury); *Newman–Green, Inc.*, 590 F.Supp. at 1087; *Zinser v. Rose*, 245 Ill.App.3d 881, 185 Ill.Dec. 574, 577–78, 614 N.E.2d 1259, 1262–63 (3d Dist.1993) (citing *Gadson*, 807 F.Supp. at 1421); *Wigglesworth*, 137 Ill.Dec. at 416–17, 546 N.E.2d at 40–41; *compare Brown v. Veile*, 198 Ill.App.3d 513, 144 Ill.Dec. 708, 712, 555 N.E.2d 1227, 1231 (5th Dist.1990) (citing *Steinberg* for the proposition that "the supreme court of Illinois has held that only 'consumers' have standing to sue under the statute"), *with Sullivan's Wholesale Drug*, 158 Ill.Dec. at 191, 573 N.E.2d at 1376 (more recent case in same appellate district, holding businessmen do have standing under the CFDBPA). In the present case, while B. Sanfield is not a consumer of Finlay's goods or services, it is a competitor and has alleged business practices on the part of Finlay which address the market generally and implicate consumer protection concerns. As a result, it has standing under the CFDBPA, and Counts II and III of the amended complaint should not be dismissed for that reason.[12]

## CONCLUSION

For the reasons stated above, Finlay's motion to dismiss and motion for sanctions are denied.

---

12. Finlay also discusses the issue of whether B. Sanfield is entitled to jury trial on its CFDBPA claims (albeit not by formally moving to strike the jury demand but instead by asserting that it "should ... be ignored"), citing state cases for the proposition that the CFDBPA does not authorize jury trials. Because the Seventh Amendment right to jury trial applies to federal courts, and not just to federal claims, however, whether a party before this court has a right to jury determination of a particular state law claim or issue is a matter of federal, not state, law. *See Simler v. Connor*, 372 U.S. 221, 222, 83 S.Ct. 609, 610–11, 9 L.Ed.2d 691 (1963); *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Gallagher v. Wilton Enter., Inc.*, 962 F.2d 120, 122 (1st Cir.1992); *Hattaway v. McMillian*, 903 F.2d 1440, 1451 n. 16 (11th Cir.1990); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2303 (1994) ("It is now clear that federal law determines whether there is a right to jury trial in a case in federal court and that state law is wholly irrelevant."). Finlay has neither raised nor briefed the issue as one of federal law under the Seventh Amendment and Fed.R.Civ.P. 38(a). The court, therefore, does not consider the issue to be fully before it, does not address it, and leaves Finlay with the avenue of raising the issue at the summary judgment stage.